2015 IL App (2d) 140337
No. 2-14-0337
Opinion filed March 25, 2015

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| JACK BARBA, | ) | Appeal from the Circuit Court |
| | ) | of Du Page County. |
| Plaintiff-Appellant and Cross-Appellee, | ) | |
| | ) | |
| v. | ) | No. 10-L-29 |
| | ) | |
| THE VILLAGE OF BENSENVILLE, | ) | |
| | ) | |
| Defendant-Appellee and | ) | |
| Cross-Appellant | ) | |
| | ) | Honorable |
| (Bensenville Fire Protection District No. 2, | ) | Patrick J. Leston, |
| Defendant-Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HUTCHINSON delivered the judgment of the court, with opinion.
Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Jack Barba, appeals from the trial court's order dismissing his claims for breach of contract, granting him summary judgment for promissory estoppel but with a limited damages award of $322 (we round all amounts to the nearest dollar or thousand dollars), and granting him partial attorney fees against defendants, the Village of Bensenville (the Village) and Bensenville Fire Protection District No. 2 (the District). The Village cross-appeals the $322 award as well as the award of attorney fees. For the reasons that follow, we affirm in part, reverse in part, and remand.

¶ 2                                    I. BACKGROUND

¶ 3     This case comes before us on both defendants' motions to dismiss and Barba's motion for summary judgment. The determinations made by the trial court at summary judgment—namely, that the Village made an enforceable promise to Barba and that he relied on that promise when he retired—do not affect our review of the dismissed breach-of-contract claims. We set forth the facts as follows.

¶ 4     Barba began his service as a firefighter for the Village in February 1978. Over the years, Barba rose to the position of lieutenant and eventually became the chief of the department in 1994. After a departmental reorganization in 2005, Barba became "Chief of the Fire Prevention Bureau" (essentially, the Village fire marshal). In this new position, Barba continued to receive the same compensation and benefits with no limit on his accrued vacation and sick time. Throughout his employment, Barba participated in the firefighters' pension fund, which was managed by the Village.

¶ 5     In November 2006, the citizens of Bensenville voted for a referendum to abolish the Village fire department and to replace it with their membership in a municipal fire protection district. This led to the creation of the District as a unit of municipal government. Following the vote, the Village and the District began work on an intergovernmental agreement (IGA) under which the District would absorb the Village fire department's personnel, equipment, and responsibilities, beginning May 1, 2007. Under the terms of the IGA and section 4-106.1(b) of the Illinois Pension Code (the Pension Code) (40 ILCS 5/4-106.1(b) (West 2010)), on that date the District would also assume responsibility for the management of the Village's firefighters' pension fund.

¶ 6    With the transition in the offing, Barba, who was 52 years old and eligible for retirement (40 ILCS 5/4-109(a) (West 2010) (age 50 or more)), told the Village manager that he intended to retire with 30 years' service credit toward his pension. However, at that point in 2007, he had only 29 years of service. On February 9, 2007, Barba met with the Village manager and the Village's attorneys to discuss the boundaries of the new fire protection district. At some point, one of the attorneys told Barba that his retirement would be "covered" because a provision in the final IGA would protect his 30-year pension.

¶ 7    On February 16, 2007, Barba gave notice to the Village that he intended to work for several months and then use a portion of his accrued time so that he could retire with 30 years' credit in February 2008. On February 22, 2007, Barba was invited to attend a meeting of the District's board to discuss his retirement. The chief of the Village fire department, Michael Spain, was also present. At that meeting, the attorney for the District, Karl Ottosen, informed Barba that, if he elected to remain with the fire department after the transition, the District would employ him, but only at a lieutenant's rank and at a lieutenant's salary. Barba declined, in part because this option would negatively impact his firefighter's pension, which would be determined by his salary "at the date of retirement" (40 ILCS 5/4-109(a) (West 2010)). Ottosen then recommended that, in view of Barba's many years of loyal public service, the Village should simply raise Barba's salary during his final month of employment and then Barba could retire when the District assumed operations on May 1. The raise would enable Barba to retire at a chief's salary with his "full 30," including a cost-of-living increase for his final year of service (see 40 ILCS 5/4-109.1 (West 2010)).

¶ 8    Thereafter, Barba hired an attorney and, throughout April and May, Barba's counsel wrote letters to the Village outlining the agreement between Barba, the Village, and the District.

The agreement was as follows. With respect to his pension, Barba's salary during the year prior to his retirement was $88,000. As noted, he was due for a cost-of-living increase for his final year, which would have raised his salary to $92,000. However, because Barba was retiring with less than 30 years of service, the multiplier for his pension formula would have been calculated at 72.5% rather than 75% (see 40 ILCS 5/4-109(c) (West 2010)). Accordingly, to ensure that Barba retired with his "full 30," his salary would be raised to $96,000 on the date of his retirement to offset the difference for the purpose of calculating his pension ($88,000 x 0.75 ≈ $96,000 x 0.725). This would result in a one-time increase of $322 to Barba's final paycheck as an active firefighter. In addition, the Village would pay Barba approximately $84,000 for his accumulated vacation and sick time and would continue his insurance coverage through February 2008.

¶ 9 On April 30, 2007, the Village and the District executed the final IGA. Section 6 of the IGA provided that all Village fire department personnel would become employees of the District on May 1, with one exception:

"One sworn member of the Fire Department, Chief Jack Barba, will retire on or before the Effective Date. The Village will adjust Chief Barba's compensation for pension purposes in an amount sufficient to assure that Chief Barba will enjoy a retirement benefit equal to that which he would have enjoyed ha[d] he continued to serve at his present rank until February[ ] 2008, which would have been his 30th year of service. In addition, the Village will be responsible for directly compensating Chief Barba for his accumulated sick leave and vacation time. The District and the Village agree to jointly defend Chief Barba should the Bensenville Firefighters' Pension Board

challenge or otherwise deny or interfere with Chief Barba's pension benefits determined in accordance with the formula herein provided."

However, section 13 of the IGA provided as follows:

"M. No Third Party Beneficiaries. The Parties agree that no claim by any person to the status of third party beneficiary under this Agreement shall be recognized by either Party thereto."

Such provisions are often called "no third party beneficiary," or NTPB, clauses.

¶ 10 Barba began using his accrued time on May 1, 2007. On May 4, he received his final paycheck from the Village, for the last two weeks in April, but the check did not reflect a raise of $322. In a letter to Barba dated May 25, the Village's attorney stated that the Village did not dispute Barba's attorney's rendition of the agreement. On June 27, the Village issued a "change in status" form to raise Barba's salary retroactively for the final pay period in April. The Village, however, did not make an appropriation ordinance to that effect and, as a result, Barba never received the raise. See 40 ILCS 5/4-118.1(d) (West 2010) (providing that a firefighter's salary must have been "established by [a] municipality appropriation ordinance" to be pensionable).

¶ 11 When Barba applied for his pension from the District, the pension board found that, because the Village had not made an appropriation by ordinance to retroactively increase Barba's pensionable salary to $96,000, his pension benefits would be determined based on his salary on the date of his retirement, or $88,000, again at 29 years of service. The difference to Barba's pension was approximately $6,000 per year ($88,000 x 0.725 as opposed to $96,000 x 0.725). Barba appealed the pension board's decision to the trial court, which affirmed the decision on administrative review. In April 2008, Barba's attorney wrote the Village and the District

regarding attorney fees incurred during the administrative proceeding, but neither the Village nor the District responded.

¶ 12    In 2010, Barba filed a complaint in the trial court.  Our review pertains to Barba's second amended complaint, which was filed with leave of court.  Count I, a breach-of-contract claim against the Village, was dismissed with prejudice and is not a subject of this appeal.  Count II alleged breach of contract against the Village based on Barba's status as a third-party beneficiary of the IGA, and count IV made the same allegations against the District.  Count III alleged promissory estoppel against the Village based on the IGA and the exchanges among Barba and his attorney, the Village, and the District.  Count V made the same allegations against the District.  The complaint sought damages equivalent to the pension benefits Barba would have received (which Barba estimated were $324,000 if he lived to be 80; $407,000 if he lived to be 90; etc.) and attorney fees from both the administrative proceeding and the instant litigation.

¶ 13    The Village and the District filed combined motions to dismiss under section 2-619(a)(9) of the Code of Civil Procedure (the Code) (735 ILCS 5/2-619(a)(9) (West 2010)).  The motions alleged that the NTPB clause precluded Barba's breach-of-contract claims; that Barba could not have reasonably relied on the representations of officials from the Village and the District; that the proposed increase constituted an "illegal pension spike" in violation of the Pension Code, thereby rendering any contract or agreement void as contrary to public policy; and that the Village and the District were under no obligation to reimburse Barba for attorney fees, because Barba hired his own attorney for the pension board proceeding.

¶ 14    Following a hearing, the trial court dismissed the third-party-beneficiary counts (counts II and IV) on the basis of the NTPB clause, but it did not dismiss the promissory-estoppel counts. Thereafter, the parties filed cross-motions for summary judgment on the issues of promissory

estoppel and attorney fees. After hearing argument, the court made several rulings. First, the court granted summary judgment in favor of the District on Barba's promissory-estoppel claim (count V). The court stated that, because Barba was employed by the Village, it was not reasonable for him to rely on any representations made to him regarding his pension by the District. Second, the court granted summary judgment in favor of Barba on his promissory-estoppel claim against the Village (count III), but limited Barba's damages to $322. The court found that it was reasonable for Barba to rely on the representations made to him by the Village's personnel; however, the court indicated that the administrative proceeding involving the pension board barred Barba from recovering "lost pension benefits" as damages. To do so, according to the court, would have constituted "a second bite at the apple." The court referenced the claimed illegality of Barba's "pension spike," but found that it could avoid that issue by limiting Barba's damages and resolving his claims on alternative, non-contractual grounds. Finally, the court awarded Barba attorney fees incurred during the pension board proceeding ($4,431), but ordered that the parties bear their own fees for the instant litigation.

¶ 15    Barba timely appealed and the Village timely cross-appealed.

¶ 16                                    II. ANALYSIS

¶ 17    On appeal, Barba contends that the trial court erred when it (1) granted defendants' section 2-619 motions and dismissed his third-party-beneficiary claims (counts II and IV), and (2) limited his damages for promissory estoppel to the prorated amount of his salary increase for his last paycheck (count III). We address these issues in turn, but before doing so we note that Barba did not in his opening appellate brief challenge the trial court's order granting summary judgment in favor of the District on his promissory-estoppel claim (count V). After the District pointed this out, Barba vaguely attempted to raise the issue in his reply brief. *Cf*. Ill. S. Ct. R.

341(h)(7) (eff. Feb. 6, 2013) ("Points not argued are waived and shall not be raised in the reply brief ***."); *Vancura v. Katris*, 238 Ill. 2d 352, 370 (2010) ("[A] vague allegation of error is not 'argued' and will not satisfy the requirements of the rule."). We determine that Barba has forfeited the issue and therefore affirm the trial court's grant of summary judgment in favor of the District on count V.

¶ 18                    A. Barba's Third-Party-Beneficiary Claims

¶ 19    As noted, the trial court granted defendants' motions to dismiss Barba's third-party-beneficiary claims, counts II and IV, under section 2-619(a)(9) of the Code. Such motions admit the legal sufficiency of the complaint, but raise defenses or other affirmative matters that defeat the action. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. A complaint should not be dismissed under section 2-619 of the Code unless it appears that no set of facts under the pleadings can be proved that would entitle the plaintiff to recover. *Incandela v. Giannini*, 250 Ill. App. 3d 23, 26 (1993) (citing *People ex rel. Hartigan v. Knecht Services, Inc.*, 216 Ill. App. 3d 843, 860 (1991)). In ruling on the motion, the trial court must take all facts properly pleaded as true. *Id.* Our review is *de novo*. *Patrick Engineering*, 2012 IL 113148, ¶ 31.

¶ 20    Before we address the merits, the District alleges that Barba abandoned his third-party-beneficiary claims by failing to reallege those counts "verbatim" in his second amended complaint and by "substantially altering" the factual allegations supporting those claims. The District further claims that a "summary affirmance" on these counts is in order. The Village does not join the District in making this argument and rightly so. The District cites no authority, and we are aware of none, requiring plaintiffs to reallege their claims "verbatim" to avoid abandoning them, and in this case, though not verbatim, those claims were sufficiently realleged

and incorporated. *Cf.* 735 ILCS 5/2-616(c) (West 2010). As for the contention that the claims were "substantially alter[ed]," the District failed to raise this objection in the trial court, and on appeal it fails to explain why it deems the amendments to the complaint "substantial[ ]." Accordingly, the District has forfeited this argument, both by failing to raise it below (*Village of Lake Villa v. Stokovich*, 211 Ill. 2d 106, 121 (2004)) and by failing to develop it on appeal (*Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338, 348 (2006)). At any rate, we have examined the complaints and find no variance that would have precluded the trial court from granting Barba leave to amend. A "summary affirmance" is thus unwarranted.

¶ 21      Turning to the merits, Barba contends that the trial court erred in granting defendants' motions to dismiss, because section 6 of the IGA clearly provided that he was an intended third-party beneficiary of it. In the trial court, defendants claimed and the court found that the IGA was ambiguous and that the NTPB clause in section 13(M) negated Barba's status as a third-party beneficiary. "The well-established rule in Illinois is that if a contract is entered into for the direct benefit of a third person, the third person may sue for a breach of the contract in his or her own name, even though the third person is a stranger to the contract and the consideration." *Olson v. Etheridge*, 177 Ill. 2d 396, 404 (1997). "The promise does not have to be for the sole benefit of the third party as long as it is for [the third party's] direct or substantial benefit." *Advanced Concepts Chicago, Inc. v. CDW Corp.*, 405 Ill. App. 3d 289, 293 (2010). The issue here turns then on whether the Village and the District entered into the IGA for, among other things, Barba's direct benefit. We determine that they did.

¶ 22      In contract interpretation, there is a strong presumption against the conferring of benefits to noncontracting third parties. *F.H. Paschen/S.N. Nielsen, Inc. v. Burnham Station, L.L.C.*, 372 Ill. App. 3d 89, 96 (2007). " 'In order to overcome that presumption, the implication that the

contract applies to third parties must be so strong as to be practically an express declaration.' [Citations.]" *Id.* Thus, we examine the language of the IGA to determine whether Barba was an intended beneficiary of it or merely an incidental one. Section 6 of the IGA provides, "The Village *will adjust* Chief Barba's compensation for pension purposes in an amount sufficient to assure that Chief Barba will enjoy a retirement benefit equal to that which he would have enjoyed ha[d] he continued to serve at his present rank until February[ ] 2008, which would have been his 30th year of service." (Emphasis added.) We find that the IGA was clear and unequivocal and that Barba was a third-party beneficiary of it. Accordingly, once Barba retired, his rights under the IGA vested (*Olson*, 177 Ill. 2d at 412) and this suit became ripe.

¶ 23 The Village, however, claims that the IGA was ambiguous because it did not explicitly state that the Village would make a line-item appropriation to increase Barba's salary. In addition, the Village argues that Barba's suit is premised only on a "one-time payment" of $322 and that his losses were thus no greater than that amount. But in our view, the Village has misrepresented the provisions of the IGA and Barba's claims. It is not as though the Village was required to select from among a number of options to make Barba's salary increase pensionable. Under the Pension Code, the *only* way to make the salary increase count toward Barba's pension was for the Village to establish the increase through a municipal appropriation ordinance. See 40 ILCS 5/4-118.1(d) (West 2010); 50 Ill. Adm. Code 4402.30 (1996); see also *Smith v. Board of Trustees of the Westchester Police Pension Board*, 405 Ill. App. 3d 626, 632-33 (2010) (finding that a final-year increase in former police chief's salary was not pensionable absent an ordinance that provided for his salary increase; affirming pension board). In theory, the Village could have made the appropriation at any time, before or after Barba's retirement. See 50 Ill. Adm. Code 4402.50(a) (1996) (when made by appropriation, "retroactive pay increases" are pensionable).

¶ 24    In sum, when the Village failed to make any appropriation for Barba's salary increase, the Village precluded the pension board from including the salary increase in its computation of Barba's pension. See S*mith*, 405 Ill. App. 3d at 632-33. The IGA stated that the Village "will adjust" Barba's compensation for pension purposes and, in context, there was only one reasonable interpretation of that phrase: *i.e.*, that the Village would raise Barba's pensionable salary by means of an appropriation ordinance. Since it is difficult to imagine how the IGA could have been clearer, we reject the Village's claim that the IGA was ambiguous.

¶ 25    Next, in support of its position that the trial court properly dismissed Barba's claim under section 2-619(a)(9) of the Code, the District argues that the NTPB clause in section 13(M) of the IGA was "fatal" to Barba's claim. We disagree. The NTPB clause in section 13(M) was phrased in broad, general terms. In contrast, the paragraph devoted to Barba in section 6 of the IGA was quite specific; it referenced Barba's retirement, his pension, his salary, his vacation and sick time, the pension board, and the allocation of potential attorney fees. As Barba points out in his brief, "[i]n a contract in which there are general and specific provisions relating to the same subject, the specific provision is controlling." *Faith v. Martoccio*, 21 Ill. App. 3d 999, 1003 (1974); see also *People ex rel. Madigan v. Burge*, 2014 IL 115635, ¶ 31 (under the general/specific canon, "the specific provision is construed as an exception to the general one," thereby eliminating any conflict). Hence, the more specific provision related to Barba's benefits governs over the more general NTPB provision, rendering the latter inoperative at least against Barba.

¶ 26    Finally, both the Village and the District devote a portion of their briefs to arguing that a pensionable end-of-career increase in Barba's salary would have constituted an "illegal pension spike" under the Pension Code, thereby rendering the IGA void on public policy grounds.

Defendants point our attention primarily to *People ex rel. Campbell v. Swedeberg*, 351 Ill. App. 121 (1953), wherein we stated that it was reasonable for the legislature to adopt the anti-pension-spiking measure at issue in that case. *Id*. at 126-27. But defendants overlook that the statute at issue in *Swedeberg* provided that a retiring police officer's pension was determined by his or her salary for " 'one year immediately prior to the time of his [or her] retirement.' " *Id.* at 123 (quoting Ill. Rev. Stat. 1951, ch. 24, ¶ 895). In contrast, the Pension Code in effect for municipal firefighters at the time of Barba's retirement provided that Barba's pension would be determined by his salary "*at the date* of retirement." (Emphasis added.) 40 ILCS 5/4-109(a) (West 2010). The legislature has since amended section 4-109(a) so that a firefighter hired after January 1, 2011, is subject to a different benefits framework, which is based on the average of the firefighter's highest-earning consecutive 8-year period within his or her last 10 years of service. Pub. Act 96-1495, § 5 (eff. Jan. 1, 2011). All of this convinces us that, if the legislature had intended to prohibit an end-of-career pension increase for municipal firefighters prior to Barba's retirement, it easily could have done so. See *People v. Comage*, 241 Ill. 2d 139, 156 (2011) ("The best indicator of [the legislature's] intent is the language of the statute itself [and] if the statute's language is unambiguous, then it is applied as written ***.").

¶ 27    We reiterate that Barba's end-of-career salary increase, or any salary increase for that matter, would have been lawfully pensionable so long as the increase was established by municipal ordinance. 40 ILCS 5/4-118.1(d) (West 2010); see also *Smith*, 405 Ill. App. 3d at 632-33. Accordingly, defendants have failed to carry the burden of establishing that the actions called for in the IGA were illegal under the Pension Code. See *Fosler v. Midwest Care Center II, Inc.*, 398 Ill. App. 3d 563, 571 (2009) (noting that an agreement is void as against public policy only if it is clearly contrary to the law).

¶ 28    We conclude that Barba was a third-party beneficiary of the IGA and that neither the NTPB clause nor the Pension Code presented an obstacle to his recovery.  We therefore reverse the trial court's dismissal of counts II and IV and remand for further proceedings.

¶ 29                              B. Limitation on Damages

¶ 30    As noted, the trial court granted summary judgment in favor of Barba on his promissory-estoppel claim against the Village, but limited his available damages award to the amount of the retroactive salary increase, or $322.  The Village cross-appeals the award.

¶ 31    Summary judgment will be granted "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue [of] material fact and that the moving party is entitled to a judgment as a matter of law."  735 ILCS 5/2-1005(c) (West 2010).  The purpose of summary judgment is not to try a question of fact, but to determine if one exists.  *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 517 (1993).  We review *de novo* the trial court's summary-judgment ruling.  *Lake County Grading Co. v. Village of Antioch*, 2014 IL 115805, ¶ 18.

¶ 32    The trial court found that Barba could not seek damages for what it considered his "lost pension benefits" in this case.  The court incorrectly viewed Barba's suit for his lost pension benefits as duplicative of his administrative action against the pension board, as if barred by collateral estoppel.  But Barba sought different relief from different municipal entities in these two fundamentally different proceedings.  That is, in the administrative action, Barba sought his full pension from the pension board and, when that proved unavailable, in this suit, he sought equivalent damages from the Village.  Barba could not have sued the pension board for lost benefits as damages any more than he could have sought his pension directly from the Village.  See 40 ILCS 5/4-123 (West 2010) (firefighter's pension board has exclusive authority to control

and manage pension fund); *Quinones v. City of Evanston*, 829 F. Supp. 237, 241 (N.D. Ill. 1993) (noting that a firefighters' pension fund is not suable entity under Illinois law; it is merely aggregation of assets with no provision for suing or being sued). Further, no party has alleged any collaboration between the Village and the pension fund; thus, they were not in privity with each other. See *Pedersen v. Village of Hoffman Estates*, 2014 IL App (1st) 123402, ¶ 47 (citing *Demski v. Mundelein Police Pension Board*, 358 Ill. App. 3d 499, 503 (2005)).

¶ 33    Moreover, nothing in Illinois law precludes Barba from seeking relief from his former employer or from the municipal entity that now manages his former employer's pension fund. While the Pension Code would preempt a suit by Barba against the pension board in the circuit court (see generally *Burge*, 2014 IL 115635, ¶ 22), it does not preempt his suit against the Village or the District. *Cf. Forbus v. Sears Roebuck & Co.*, 30 F.3d 1402, 1406-07 (11th Cir. 1994) ("the mere fact that the plaintiffs' damages may be affected by a calculation of pension benefits" does not trigger preemption under the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C § 1144 (1994)). We know of no reason, and the parties cite none, why Barba should be precluded from seeking ordinary contract remedies—including the monetary equivalent of the full payment of benefits, retroactive benefits, an injunction, reinstatement, or rescission of the pension plan agreement (see generally 70 C.J.S. *Pensions* § 160 (2005))—in this case.

¶ 34    We therefore affirm the trial court's order to the extent that it granted summary judgment to Barba on the merits of his promissory-estoppel claim, but we reverse its award of $322 and its limitation on damages. At present, the record is unclear on the precise amount of Barba's loss. In the trial court, Barba provided several estimates of the difference in his pension benefits over his life expectancy, but this *prima facie* evidence did not conclusively resolve the issue. See

*Marquette National Bank v. Heritage Pullman Bank & Trust Co.*, 109 Ill. App. 3d 532, 535 (1982) (evidence must be "clear and free from doubt" that the plaintiff suffered damages in the amount alleged). This is a genuine issue of material fact and we remand the cause for a trial on damages. In light of the foregoing, the Village's cross-appeal on the award of $322 is moot.

¶ 35                                             C. Attorney Fees

¶ 36    Both Barba and the Village contest the trial court's partial award of attorney fees. "Whether and in what amount to award attorney fees is within the discretion of the trial court and its decision will not be disturbed on review absent an abuse of that discretion." *Med+Plus Neck & Back Pain Center, S.C. v. Noffsinger*, 311 Ill. App. 3d 853, 861 (2000) (citing *In re Estate of Callahan*, 144 Ill. 2d 32, 43-44 (1991)). "An abuse of discretion exists only where the trial court's decision is arbitrary, fanciful, or unreasonable, such that no reasonable person would take the view adopted by the trial court." *People v. Ramsey*, 239 Ill. 2d 342, 429 (2010).

¶ 37    Since we are reversing and remanding, and the status of attorney fees for the instant litigation may change, we vacate the trial court's order that the parties bear their own costs for this lawsuit, pending a final determination on the merits. However, we conclude that, given the IGA's statement regarding attorney fees, the trial court did not abuse its discretion in awarding Barba attorney fees in connection with the pension board litigation ($4,431), and so we affirm that portion of the judgment.

¶ 38                                             III. CONCLUSION

¶ 39   For the reasons stated, the dismissal of counts II and IV is reversed; summary judgment on count III is affirmed in part and reversed in part; and summary judgment on count V is affirmed. The award of attorney fees is affirmed in part and vacated in part. The cause is

remanded to the circuit court of Du Page County for further proceedings consistent with this opinion.

¶ 40    Affirmed in part, reversed in part, and vacated in part; cause remanded.