# Illinois Official Reports

## Appellate Court

---

***Falls v. Silver Cross Hospital & Medical Centers*, 2016 IL App (3d) 150319**

---

| | |
|---|---|
| Appellate Court Caption | BRIAN FALLS, Individually and on Behalf of All Others Similarly Situated, Plaintiff-Appellant, v. SILVER CROSS HOSPITAL AND MEDICAL CENTERS, an Illinois Not-for-Profit Corporation, Individually and d/b/a Silver Cross Hospital, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-15-0319 |
| Filed | November 30, 2016 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 13-CH-2683; the Hon. John Anderson, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part; cause remanded. |
| Counsel on Appeal | John H. Alexander, of John H. Alexander & Associates, and Larry D. Drury (argued) and Robert A. Langendorf, all of Chicago, for appellant.<br><br>Bryan M. Webster (argued), Joel G. Chefitz, and Hallie Ritzu, of McDermott Will & Emery LLP, of Chicago, for appellee. |
| Panel | JUSTICE WRIGHT delivered the judgment of the court, with opinion.<br>Justice Holdridge concurred in the judgment and opinion.<br>Justice Lytton concurred in part and dissented in part, with opinion. |

**OPINION**

¶ 1     In August 2013, plaintiff filed an action in the circuit court of Will County seeking damages for Silver Cross Hospital's billing and lien practices. The lawsuit alleged Silver Cross Hospital's practices violated the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2010)). In addition, plaintiff sought damages in separate counts of the class action complaint seeking damages for breach of contract. Silver Cross Hospital resisted the class action by filing a motion to dismiss the pending lawsuit pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)).

¶ 2     The trial court granted Silver Cross Hospital's motion and dismissed plaintiff's second amended complaint based on section 2-615 grounds. We affirm in part and reverse in part.

¶ 3                                          BACKGROUND

¶ 4     On December 1, 2010, Silver Cross Hospital (Silver Cross) entered into a Facility Participation Agreement (FPA) with United Healthcare Insurance (United Healthcare). In the FPA, United Healthcare granted Silver Cross PPO status for United Healthcare customers.

¶ 5     In exchange for PPO status provided by the terms of the FPA, Silver Cross agreed to allow United Healthcare to pay for the medical services provided to United Healthcare's insureds at a reduced PPO rate for certain medical services. As part of the FPA, Silver Cross also agreed to treat all reduced PPO rates paid by United Healthcare as payment in full for all qualified services. The FPA provided that United Healthcare would determine the qualified services eligible for PPO discounts based on each customer's benefit plan with the company.

¶ 6     In addition, the FPA strictly prohibited Silver Cross from engaging in balance billing practices to collect more than the reduced PPO rate for qualified services from patients insured by United Healthcare. Plaintiff's brief asserts that the language in this section of the contract between United Healthcare and Silver Cross states those two entities "are the only entities with rights and remedies under the [FPA]."

¶ 7     It is undisputed that United Healthcare was the medical insurance provider for plaintiff, Brian Falls. On March 6, 2011, plaintiff received emergency care and was admitted into Silver Cross for medical treatment resulting from an automobile accident involving a driver insured by State Farm. Silver Cross released plaintiff from inpatient care on March 8, 2011. For purposes of this appeal, the parties agree the full value of hospital services plaintiff received from Silver Cross totaled $18,129.50. It also appears from the record that all medical services plaintiff received from Silver Cross constituted qualified services according to plaintiff's benefit plan with United Healthcare.

¶ 8     It is also undisputed for purposes of this appeal that plaintiff agreed to be responsible to "reimburse" Silver Cross for billed services that were not paid by his medical insurance provider. As part of this agreement, plaintiff also consented to allow Silver Cross to provide notice of a hospital lien for the full value of hospital services to help secure payment for services rendered. The language of the consent form is included in the appendix to this decision.

¶ 9     On March 29, 2011, Silver Cross issued the required notice, as allowed by the consent form, informing plaintiff and others that Silver Cross was asserting a hospital lien in the

amount of $18,129.50. The lien notice stated that Silver Cross "claims a lien on any money due or owing on any claim or causes of action for compensation, damages, contributions, settlements or judgment from *ANY PERSON OR INSURANCE COMPANY LIABLE* who is alleged to have caused the injuries and to be liable therefore."

¶ 10    Thereafter, the record indicates Silver Cross and United Healthcare adjusted the charges to reflect the PPO discount United Healthcare would be obligated to pay on behalf of its customer, plaintiff, pursuant to the terms of the FPA. On April 20, 2011, United Healthcare paid Silver Cross a total of $5957.15[1] for plaintiff's emergency and inpatient treatment. Silver Cross received and accepted United Healthcare's payment of $5957.15 on May 18, 2011, leaving a balance due of $1264.23 that United Healthcare did not pay. The July 13, 2011, statement Silver Cross sent to plaintiff also documents that Silver Cross received a payment of $126.87 directly from State Farm, which was applied to plaintiff's account.

¶ 11    After receiving payments in 2011 from both United Healthcare and State Farm, Silver Cross did not immediately reduce the hospital lien from the full amount of $18,129.50 to reflect those payments. However, on March 1, 2013, Silver Cross issued a revised notice of lien reducing the hospital lien to the unpaid balance of $1264.23.

¶ 12    Meanwhile, plaintiff settled the personal injury claim with the third-party tortfeasor for $85,000 in May 2012. The settlement draft was jointly issued to both plaintiff and Silver Cross.

¶ 13    On June 20, 2012, plaintiff's attorney wrote to Silver Cross and formally demanded Silver Cross "endorse [plaintiff's] Settlement Draft as his debt to [Silver Cross's] facility has been paid." To date, Silver Cross has not endorsed plaintiff's settlement check and plaintiff has not paid the balance of $1264.23 to Silver Cross.

¶ 14    On January 29, 2013, plaintiff filed a federal lawsuit in the Northern District of Illinois. The federal lawsuit alleged the 2011 lien in the amount of $18,129.50 exceeded the amount Silver Cross could collect directly from the patient in violation of the FPA between Silver Cross and plaintiff's insurance company, United Healthcare. Plaintiff claimed the hospital was engaged in billing practices that were unfair to the consumer. While the federal lawsuit was pending, Silver Cross issued a revised notice of hospital lien.

¶ 15    On May 15, 2013, the federal judge issued a memorandum opinion and order denying Silver Cross's motion to dismiss plaintiff's complaint. However, the federal court expressed concerns regarding the federal court's jurisdiction because the automobile accident, Silver Cross's incorporation, and plaintiff's residence all tied back to the State of Illinois. Following the court's ruling expressing these concerns, plaintiff voluntarily dismissed the federal court action on July 8, 2013.

¶ 16    Plaintiff filed the instant case in the circuit court of Will County on August 19, 2013. On August 20, 2014, plaintiff filed a second amended class action complaint (second amended complaint). In the factual allegations common to all counts, plaintiff alleged Silver Cross asserted an $18,129.50 lien, representing the full amount of charges "without any discounts and in violation of the terms and conditions of the 'FPA.' " Plaintiff alleged Silver Cross had the intent to violate the FPA by filing the inflated lien and "allowing [Silver Cross] to receive $18,129[.]50, the full amount of all of its invoices for medical treatment rendered to plaintiff at SILVER CROSS." On August 23, 2013, plaintiff moved for class action certification.

---

[1]The parties uniformly state that United Healthcare paid Silver Cross $5957.15. The record documents the payment of $5957.15 included $758 directed to Bassam Kawadry.

¶ 17 Plaintiff challenges the court's ruling concerning counts I, II, III, and V of the second amended complaint. For purposes of this opinion, we will recite the allegations relevant to those counts alone before discussing the court's respective findings on each count relevant to this appeal.

¶ 18 Count I of the second amended complaint alleged that Silver Cross "fraudulently misrepresented, concealed, and otherwise fraudulently misled" plaintiff for the purpose of placing a hospital lien against its patient and other third parties. Count I of the second amended complaint also alleged Silver Cross fraudulently concealed that Silver Cross had previously "promised and agreed that the total payment received from United Healthcare, other than deductibles and co-payments, would be treated as payment in full for all services rendered." Further, count I of the second amended complaint claims that plaintiff "reasonably relied upon the truth of SILVER CROSS' representations in the [consent form]." Finally, plaintiff claimed damages in count I of the second amended complaint that included loss of settlement funds and diminished value of plaintiff's health insurance policy.

¶ 19 In counts II and V of the second amended complaint, plaintiff requested damages arising out of Silver Cross's intentional breach of the terms of the written FPA. Count III of the second amended complaint also alleged Silver Cross intentionally breached the written consent form between plaintiff and Silver Cross.

¶ 20 On September 16, 2014, Silver Cross filed a combined motion to dismiss all counts of the second amended complaint pursuant to section 2-619.1 of the Code of Civil Procedure (735 ILCS 5/2-619.1 (West 2012)). On January 13, 2015, the trial court heard arguments on the defendant's combined section 2-619.1 motion. The court entered its decision as a memorandum opinion and order on March 10, 2015.

¶ 21 The trial court found count I of the second amended complaint did not state a cause of action for a violation of the Consumer Fraud Act because plaintiff failed to allege Silver Cross had the requisite intent to defraud. The court also found the pleadings failed to allege actual injury to plaintiff.

¶ 22 The court found count II of the second amended complaint failed to allege facts to support plaintiff's standing to assert a breach of the FPA and determined, based on the pleadings, that the Health Maintenance Organization Act (HMO Act) (215 ILCS 125/1-2 *et seq.* (West 2010)) did not apply. The court stated that count III of the second amended complaint did not allege sufficient facts establishing Silver Cross breached its obligations to the patient as stated in the written consent form. Further, the court found count V of the second amended complaint appeared to rely upon the FPA, which expressly and contractually excludes plaintiff from receiving third-party beneficiary status. Finally, the court dismissed all remaining counts of the second amended complaint on section 2-615 grounds.

¶ 23 Following this decision, on April 9, 2015, plaintiff asked the court to dismiss all counts of the second amended complaint with prejudice, allowing plaintiff to appeal the trial court's ruling. On May 7, 2015, plaintiff filed a timely notice of appeal.

¶ 24 ANALYSIS

¶ 25 On appeal, plaintiff challenges the trial court's decision to grant defendant's combined section 2-619.1 motion to dismiss, specifically regarding counts I, II, III, and V of the second amended complaint. The trial court granted this relief on section 2-615 grounds, without

addressing the section 2-619 (735 ILCS 5/2-619 (West 2012)) contentions raised by Silver Cross in the combined motion to dismiss. Defendant asserts the trial court properly allowed defendant's motion to dismiss all counts of the second amended complaint.

¶ 26    A section 2-615 motion to dismiss "should not be granted unless it clearly appears that no set of facts could ever be proved that would entitle the plaintiffs to recover." *Behrens v. Harrah's Illinois Corp.*, 366 Ill. App. 3d 1154, 1156 (2006) (citing *Ostendorf v. International Harvester Co.*, 89 Ill. 2d 273 (1982)). On review, this court "should interpret the assertions of the complaint in the light most favorable to the plaintiff by accepting as true all well-pleaded facts and the reasonable inferences that can be drawn from them." *Gagnon v. Schickel*, 2012 IL App (1st) 120645, ¶ 18. Any exhibits attached to the complaint are to be considered as part of the pleadings for purposes of considering a section 2-615 motion to dismiss. *Id.* We review the grant of a motion to dismiss based on section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2012)) *de novo*. *Behrens*, 366 Ill. App. 3d at 1156.

¶ 27                                      I. Count I

¶ 28    Plaintiff argues the trial court erroneously dismissed count I of the second amended complaint that was based on a purported violation of the Consumer Fraud Act. It is well established that the determination of whether a certain practice is unfair requires a case-by-case determination based on the facts. *Elder v. Coronet Insurance Co.*, 201 Ill. App. 3d 733, 742 (1990) (citing *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 290 (1981)). Our supreme court provides guidance by identifying the relevant factors to be considered when evaluating whether "a given course of conduct" is unfair to the consumer according to the Consumer Fraud Act. *Robinson v. Toyota Motor Credit Corp.*, 201 Ill. 2d 403, 417 (2002). These factors include: "(1) whether the practice offends public policy; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers." *Id.* at 417-18 (citing *Federal Trade Comm'n v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n.5 (1972)). The case law also provides that an "omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud." *White v. DaimlerChrysler Corp.*, 368 Ill. App. 3d 278, 283 (2006).

¶ 29    In this case, the trial court determined plaintiff did not sufficiently allege facts to support the claim that Silver Cross had the requisite intent to engage in unfair practices. We turn to the language of the Consumer Fraud Act to evaluate the propriety of this finding.

¶ 30    The Consumer Fraud Act prohibits "the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2 (West 2010). The case law provides that circumstantial evidence may establish the violator intended for consumer reliance to result from an act or omission. *Warren v. LeMay*, 142 Ill. App. 3d 550, 573-74 (1986).

¶ 31    We note that count I of the second amended complaint alleges Silver Cross "knowingly misrepresented and/or fraudulently concealed from plaintiff and the class the material facts about their invoicing and billing practices as they related to the competing terms and conditions of the 'CONSENT FORM' (*Exhibit C*) and the 'FPA' (*Exhibit A*)." Plaintiff also alleges Silver Cross included language in the consent form that misled plaintiff into consenting to allow "a Hospital Lien for the full amount of the hospital services" without first informing plaintiff and the class that Silver Cross had contractually agreed to accept less than the "full amount" for hospital services provided to the customers of United Healthcare.

¶ 32     The competing language of the consent form at the heart of this controversy only comes into play when a patient with a medical insurer entitled to pay a PPO discounted rate for the patient's medical care, such as plaintiff, actually "recovers" an amount of money (damages) "from a third party" equal to the full value of medical services. If such a patient recovers damages in an amount above the PPO rate Silver Cross accepted as payment in full for qualified services from the patient's insurer, then the consent form permits "the Hospital to reimburse the medical and/or insurance provider for any sums previously paid" by the patient's medical insurance provider.[2] The patient is never informed about the consequences of a decision to allow the hospital to reject the prior payment from the patient's insurance provider when the medical insurance has paid a PPO discount.

¶ 33     Once Silver Cross returned the $5957.15 paid by United Healthcare, the competing language of the consent form creates havoc for the insured patient. On the one hand, the patient has been informed in the consent form that "In the event the current medical insurer is entitled to a PPO discount, the patient and/or guarantor agrees and is responsible for reimbursement of the PPO discount to the Hospital[.]" Thus, the patient could reasonably believe he or she will never pay more than the balance due based on PPO discounts for qualified services rendered by the hospital.

¶ 34     On the other hand, unrelated provisions of the same consent form firmly require the patient to be "directly responsible for services which are not paid by insurance." Thus, by allowing Silver Cross to return the $5957.15 previously paid by insurance, arguably the patient has unknowingly agreed to be responsible for the amount now unpaid by insurance, in this case, $18,129.50.

¶ 35     Finally, the same consent form permits Silver Cross to collect the debt owed by the patient by filing "a Hospital Lien for the full amount of the hospital services." When agreeing to the contents of the consent form, the patient does not learn and is not informed that Silver Cross has a well-established practice of filing a hospital lien for the full amount of services, without any consideration of applicable PPO discounts for certain medical insurance providers. The unfair practice occurs when the hospital lien is not timely reduced by PPO payments from the medical insurer until after the patient settles all claims, if any, against third-party tortfeasors.

¶ 36     Clearly, the amount of debt owed by a patient dictates the amount of a hospital lien by statute. Here, Silver Cross filed notice of a hospital lien in the amount of $18,129.50 *before* the patient's debt was reduced by the payment from the medical insurer. After United Healthcare paid $5957.15 on May 18, 2011, plaintiff's outstanding debt to Silver Cross decreased to $1264.23 (the amount United Healthcare did not pay due to deductibles and co-pays). Nonetheless, according to the complaint, Silver Cross did not *timely* reduce the amount of the hospital lien to mirror the reduction of plaintiff's balance due before settlement.

¶ 37     The case law provides that circumstantial evidence may establish the violator intended for the consumer to rely on omitted information as part of an unfair practice. The allegations of count I of the second amended complaint reveal that after receiving $5957.15 from the medical insurer, Silver Cross stubbornly maintained its lien in the full amount of $18,129.50. If proven, the alleged practices by Silver Cross described in the language of count I of the second amended complaint could be construed as strong circumstantial evidence indicating that the

---

[2]The entire consent form appears in the appendix.

hospital intended to attempt to secure payment of the hospital lien in the full amount of $18,129.50, knowing that the remaining debt plaintiff owed to the hospital was only $1264.23.

¶ 38    Generally speaking, we are well aware that hospitals are free to negotiate an agreement with the patient to allow the hospital to place a lien for the purpose of securing payment for services rendered. *Lopez v. Morley*, 352 Ill. App. 3d 1174, 1181 (2004); *Parnell v. Adventist Health System/West*, 109 P.3d 69, 80 (Cal. 2005). Yet, the consent form at play in this appeal appears to secure the patient's permission for Silver Cross to return United Healthcare's PPO discounted payment, thereby allowing Silver Cross to renege on the terms of the FPA and pursue balance billing by hospital lien with the patient's uninformed blessing. See *Evanston Hospital v. Hauck*, 1 F.3d 540, 542 (7th Cir. 1993). Arguably, this practice negates the value of the patient's medical insurance plan, resulting in monetary damages. This practice essentially converts patient into a 100% self-pay patient for purposes of the amount of the hospital lien.

¶ 39    Moreover, United Healthcare paid Silver Cross a total of $5957.15 on April 20, 2011, leaving a self-pay balance for plaintiff of not more than $1264.23. Yet, from April 20, 2011, until March 1, 2013, the hospital encumbered $16,865.27 in settlement funds above the disputed balance due of $1264.23. We conclude the loss of use of the funds in excess of $1264.23 also resulted in measurable damages to plaintiff.

¶ 40    After careful review, we conclude count I of the second amended complaint contained sufficient allegations to establish Silver Cross intended for the consumer to *rely* on incomplete information in order to secure the patient's permission for a hospital lien that was not limited to the amount of PPO discounted services. We also agree the complaint properly included allegations establishing damages from the billing and lien practices of the hospital.

¶ 41    We reverse the trial court's decision dismissing count I of the second amended complaint.

## II. Counts II and V

¶ 43    Plaintiff argues that the trial court erred by dismissing counts II and V of the second amended complaint, the breach of contract claims involving the FPA between Silver Cross and United Healthcare. Silver Cross argues that the trial court correctly dismissed these counts because plaintiff lacked standing to assert the claims. The trial court dismissed these counts because plaintiff was not a signatory to the FPA and thus, did not have standing to enforce the terms of the FPA as a party to the contract or intended third-party beneficiary.

¶ 44    Generally, whether a party has any third-party beneficiary status under a contract will depend upon the intent of the original contracting parties and the express language of the contract. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). In this case, plaintiff is not a signatory to the FPA, which expressly states: "*No Third-Party Beneficiaries. [United Healthcare] and [Silver Cross] are the only entities with rights and remedies under the Agreement.*" Plaintiff urges this court to consider another provision of the FPA, a hold harmless payment provision, which protects United Healthcare's insureds from Silver Cross seeking payment of any sum in excess of the agreed PPO discounted rate.

¶ 45    Plaintiff asserts that he qualifies as a "customer" under the terms of the FPA because plaintiff benefits from those provisions of the FPA protecting United Healthcare customers from paying more than the discounted PPO rate. Relying on *Barba v. Village of Bensenville*, 2015 IL App (2d) 140337, plaintiff argues that general contractual provisions claiming third-party beneficiaries do not control the more specific provisions creating protection for the

class. Plaintiff argues that construing the FPA to extinguish third-party beneficiary status to the class creates an unintended absurdity. According to plaintiff, since United Healthcare was not financially damaged by Silver Cross's breach of the FPA after Silver Cross returned all funds paid by United Healthcare to the insurer, it becomes unlikely that United Healthcare will attempt to enforce the terms of the FPA prohibiting practices similar to balance billing against the patient.

¶ 46 This argument is not persuasive. United Healthcare may examine the collection and lien practices of Silver Cross and elect to file an action to specifically enforce all terms of the FPA. Perhaps United Healthcare will elect to deny Silver Cross future PPO status in future contracts. There are various remedies United Healthcare could elect to remedy the purported breach of the FPA. Finally, plaintiff argues that the HMO Act (215 ILCS 125/1-2 *et seq.* (West 2010)) demonstrates that plaintiff has status as a third-party beneficiary with respect to the FPA. Plaintiff contends that United Healthcare falls within this definition of an HMO. The HMO Act provides:

> " 'Health Maintenance Organization' means any organization formed under the laws of this or another state to provide or arrange for one or more health care plans under a system which causes any part of the risk of health care delivery to be borne by the organization or its providers." 215 ILCS 125/1-2(9) (West 2010).

¶ 47 In response, Silver Cross argues that United Healthcare does not fit the definition of an HMO because United Healthcare does not provide or arrange for one or more health care plans. Silver Cross focuses on the definition of a health care plan under the HMO Act. The HMO Act provides:

> " 'Health care plan' means any arrangement whereby any organization undertakes to provide or arrange for and pay for or reimburse the cost of basic health care services[, excluding any reasonable deductibles and copayments,] from providers selected by the Health Maintenance Organization and such arrangement consists of arranging for or the provision of such health care services, as distinguished from mere indemnification against the cost of such services ***." 215 ILCS 125/1-2(7) (West 2010).

¶ 48 The trial court found that the HMO Act does not apply. Based on the pleadings, we conclude United Healthcare does not qualify as a health care plan as defined by the HMO Act. We affirm the trial court's dismissal of counts II and V of the second amended complaint.

¶ 49                                    III. Count III

¶ 50 Plaintiff argues that the trial court erroneously dismissed count III, alleging defendant breached the contract between plaintiff and Silver Cross. Specifically, plaintiff argues the consent form prohibits the placement of a lien on proceeds or anticipated proceeds of plaintiff's personal injury lawsuit.

¶ 51 Plaintiff recognizes that the Health Care Services Lien Act allows any hospital to "have a lien upon all claims and causes of action of the injured person for the amount of the health care professional's or health care provider's reasonable charges." 770 ILCS 23/10(a) (West 2010). However, plaintiff contends the language of the consent form waives the statutory power granted to a hospital to encumber causes of action of the injured party, initiated against a third party, to secure payment for plaintiff's hospitalization and emergency services. The trial court rejected this strained reading of the provision of the consent form.

¶ 52    While it is accepted that existing laws become implied terms of a contract as a matter of law (*Suarez v. Pierard*, 278 Ill. App. 3d 767, 773 (1996)), a contract will be construed against the preparer (*Dr. Charles W. Smith III, Ltd. v. Connecticut General Life Insurance Co.*, 122 Ill. App. 3d 725, 728 (1984) (citing *Saddler v. National Bank of Bloomington*, 403 Ill. 218 (1949))). When read in its entirety, we conclude that the language of the consent form does not waive Silver Cross's statutory authority to file a hospital lien, pursuant to statute, against plaintiff's personal injury cause of action. We do not express any opinion regarding whether the statute allows Silver Cross to maintain the lien in the amount of $18,129.50 after accepting payment from United Healthcare in 2011 and thereby reducing the outstanding debt to be paid by the patient to $1264.23.

¶ 53    Alternatively, the trial court properly considered the undisputed fact that plaintiff had not paid the balance of the debt, $1264.23, remaining after plaintiff's medical insurer paid its share. In response to the trial court's concern, plaintiff argues that Silver Cross first breached the terms of the consent form by initially placing any lien on third-party proceeds to be paid to plaintiff. Plaintiff argues that once Silver Cross breached the contract with plaintiff, plaintiff's failure to be responsible by paying all amounts left unpaid by insurance for co-payments and deductibles are irrelevant. See *Tower Investors, LLC v. 111 East Chestnut Consultants*, *Inc.*, 371 Ill. App. 3d 1019, 1031-32 (2007). However, the trial court concluded that an argument based on this doctrine of anticipatory repudiation failed because the trial court did not agree Silver Cross violated any promise set forth in the language of the consent form. Thus, we affirm the trial court's dismissal of count III.

¶ 54                                    CONCLUSION

¶ 55    For the foregoing reasons, we reverse the trial court's decision granting Silver Cross's motion to dismiss count I of the second amended complaint. We affirm the trial court's decision dismissing counts II, III, and V of the second amended complaint and remand this case to the trial court for further proceedings.

¶ 56    Affirmed in part and reversed in part; cause remanded.

¶ 57    JUSTICE LYTTON, concurring in part and dissenting in part.

¶ 58    I agree with the majority's opinion on all issues except its decision to affirm the trial court's dismissal of counts II and V of plaintiff's complaint, set forth in section II of the opinion. I dissent from the majority's determination that plaintiff lacks standing to sue as a third-party beneficiary of the Facility Participation Agreement (FPA).

¶ 59    The majority's conclusion that plaintiff lacks standing to sue under the FPA is based entirely on the FPA's clause generally prohibiting third-party beneficiaries. However, "no third-party beneficiary" clauses are not always fatal to a third-party beneficiary claim. See *Barba v. Village of Bensenville*, 2015 IL App (2d) 140337, ¶ 25; *In re Quincy Medical Center, Inc.*, 479 B.R. 229, 237 (Bankr. D. Mass. 2012); *Diamond Castle Partners IV PRC, L.P. v. IAC/InterActiveCorp*, 918 N.Y.S.2d 73, 75 (App. Div. 2011); *Marler v. E.M. Johansing, LLC*, 132 Cal. Rptr. 3d 691, 704 (Ct. App. 2011); *Prouty v. Gores Technology Group*, 18 Cal. Rptr. 3d 178, 187 (Ct. App. 2004); *Vaughn, Coltrane & Associates v. Van Horn Construction, Inc.*, 563 S.E.2d 548, 550 (Ga. Ct. App. 2002); *Dorr v. Sacred Heart Hospital*, 597 N.W.2d 462, 475 (Wis. Ct. App. 1999); *Versico, Inc. v. Engineered Fabrics Corp.*, 520 S.E.2d 505, 508-09

(Ga. Ct. App. 1999); *Local Union No. 1812 v. BethEnergy Mines, Inc.*, 992 F.2d 569, 572 (6th Cir. 1993).

¶ 60    Whether someone is a third-party beneficiary depends on the intent of the contracting parties, as evidenced by the contract language. *Martis v. Grinnell Mutual Reinsurance Co.*, 388 Ill. App. 3d 1017, 1020 (2009). Contract language evinces an intent to benefit and confer rights on a third party when it identifies a third-party beneficiary by name or by description of a class to which the third party belongs. *Id.*

¶ 61    When a contract contains general and specific provisions relating to the same subject, the specific provision controls. *Barba*, 2015 IL App (2d) 140337, ¶ 25. A "no third-party beneficiary" clause is typically phrased in broad, general terms. See *id.* Where a more specific provision shows an intent to directly benefit a third party, that provision governs and renders the general "no third-party beneficiary" provision inoperative. *Id.*; see also *In re Quincy Medical Center, Inc.*, 479 B.R. at 237 (provision of agreement manifesting intent to benefit class of non-party beneficiaries "trumps the boilerplate no-third-party-beneficiary clause").

¶ 62    Here, section 6.8 of the FPA, entitled "Customer 'Hold Harmless,' " states: "[Silver Cross] will not bill or collect payment from the Customer, or seek to impose a lien, for the difference between the amount paid under this Agreement and [Silver Cross]'s billed Charge." The clear and unambiguous terms of this section create a contractual obligation to hold customers harmless for payment of hospital services in excess of the scheduled amount. A hold harmless provision, such as this one, is designed specifically to protect customers. See *Dorr*, 597 N.W.2d at 475. Customers are primary beneficiaries of the "hold harmless" provision because its major thrust is to limit their expenses. See *Nahom v. Blue Cross & Blue Shield of Arizona, Inc.*, 885 P.2d 1113, 1118 (Ariz. Ct. App. 1994).

¶ 63    In this case, the intent of the "hold harmless" provision is to directly benefit United Healthcare customers like plaintiff. See *Dorr*, 597 N.W.2d at 475. The right to be held harmless is of no benefit to United Healthcare because it is contractually obligated to pay the agreed amount for the service Silver Cross renders to its insureds. See *id.* It is also of no benefit to Silver Cross because it is prohibited from seeking recourse against patients insured by United Healthcare. See *id.* The beneficiaries of section 6.8 are United Healthcare customers. See *id.* at 475-76. Thus, plaintiff, a United Healthcare customer, can bring an action to enforce the FPA as a third-party beneficiary. See *id.* at 476; see also *Jennings v. Rapid City Regional Hospital, Inc.*, 802 N.W.2d 918, 922-23 (S.D. 2011) (patients were third-party beneficiaries of agreement between hospital and managed care organization and had standing to enforce agreement); *Smallwood v. Central Peninsula General Hospital*, 151 P.3d 319, 325-27 (Alaska 2006) (Medicaid patient was third-party beneficiary of provider agreement between hospital and state and could enforce agreement); *Nahom*, 885 P.2d at 1118 (insured patient was third-party beneficiary of participation agreement between hospital and insurer and could seek to enforce agreement).

¶ 64    Additionally, section 6.9 of the FPA, entitled "Consequences for Failure to Adhere to Customer Protection Requirements," supports my conclusion that the FPA creates third-party beneficiary rights for customers like plaintiff. That section states: "If [Silver Cross] collects payment from, brings a collection against, or asserts a lien against a Customer, for Covered Services rendered (other than for the applicable co-payment, deductible or coinsurance) contrary to section 6.7 or 6.8 of this Agreement, [Silver Cross] shall be in breach of this Agreement." This provision, like the "hold harmless" provision above, is intended to benefit

customers. It identifies that group by name, and its purpose is to prevent Silver Cross from looking to United Healthcare customers for payment in excess of the scheduled amount. See *Nahom*, 885 P.2d at 1118. This provision gives customers the right to sue Silver Cross for breach of contract. See *Dorr*, 597 N.W.2d at 475-76.

¶ 65    While the FPA contains a "no third-party beneficiaries" clause expressing a general intent not to create third-party beneficiary rights, sections 6.8 and 6.9 of the FPA are more specific provisions intended to benefit United Healthcare customers and create third-party beneficiary rights that United Healthcare customers can enforce. See *id.* at 476. Therefore, I dissent from the majority's conclusion that plaintiff, a United Healthcare customer, does not have rights as a third-party beneficiary to bring an action for breach of the FPA.

## APPENDIX

For the reader's convenience, the language of the consent form is set forth below:

"A. I [plaintiff] hereby agree to pay Silver Cross Hospital their charges for all services rendered during this hospitalization or medical treatment. I also understand that I am directly responsible for services which are not paid by insurance. Should the account be referred for collection[,] I shall pay reasonable costs of collection including legal fees[.] ***

B. The patient and the undersigned guarantors agree to be liable to Silver Cross Hospital for the entire bill for the services rendered for hospital care[.] Silver Cross Hospital agrees to bill the current medical insurance provider for the patient and/or undersigned guarantor[.] In the event the current medical insurer is entitled to a PPO discount[,] the patient and/or guarantor agrees and is responsible for reimbursement of the PPO discount to the Hospital[.] [I]n the event that the patient and/or guarantor recovers from a third party the sums equal to the amount of the entire bill for the hospital rendered services or equal to the amount of any Hospital Lien filed under Illinois Compiled Statutes[,] [t]he patient and/or undersigned guarantor agree and authorized [*sic*] the Hospital to reimburse the medical and/or insurance provider for any sums previously paid to the Hospital prior to the Hospital receiving reimbursement from the patient and/or guarantor from any third party and/or workers['] compensation payments[.] In addition[,] the Hospital is allowed to file a Hospital Lien for the full amount of the hospital services with any attorney[,] third party or insurer for and against the patient and/or undersigned guarantor for any personal injuries caused by any third party (no lien right available for workers['] compensation cases)[.]"