JEFFREY D. FELDSTEIN, Plaintiff-Appellant, v. PATRICK GUINAN *et al.*, Defendants-Appellees.

First District (3rd Division)   No. 86—76

Opinion filed September 30, 1986.—Rehearing denied November 14, 1986.

Richard J. Friedman, of Leoris & Cohen, of Highland Park, and Adam Bourgeois, Sr., of Adam Bourgeois, Ltd., of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Henry A. Hauser, Myra J. Brown, and Frank J. Oles, Assistant State's Attorneys, of counsel), for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, Dr. Jeffrey D. Feldstein, brought this action seeking damages for breach of an employment contract entered into by him and defendant Dr. Patrick Guinan on behalf of defendant Cook County Hospital, and for violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Ill. Rev. Stat. 1975, ch. 121½, par. 261 *et seq.*). The trial court dismissed plaintiff's count under the Consumer Fraud Act and granted summary judgment in favor of defendants on the balance of the complaint. Plaintiff appeals.

The complaint alleges that on April 1, 1975, plaintiff entered into a one-year contract with the County of Cook for a medical residency in urology at a salary of $12,800. On January 23, 1976, Dr. Guinan wrote to plaintiff stating that he was filling the position with another person, and offering plaintiff a position in the 1977 residency program instead of the 1976 program. Plaintiff refused the offer, and during the 1976 contract year period he earned $50,000.

On June 21, 1977, plaintiff filed this suit. On February 19, 1985, the trial court granted defendants' motion to dismiss count II, sounding in the Consumer Fraud Act. The court specifically found that plaintiff was not a consumer or businessman within the meaning of the Act and that plaintiff had failed to state a cause of action under the Act.

After allowing plaintiff to file several amended complaints, the court, on December 6, 1985, granted summary judgment on the balance of plaintiff's complaint in favor of defendants. The court found that the contract was for a period of one year, that the contract was clear by its own terms and did not require parol evidence for purposes of construction, and that plaintiff had failed to establish any damages as a result of the breach.

■ Plaintiff first contends that the trial court erred in finding plaintiff suffered no damages as a result of the alleged breach of contract and in granting summary judgment for defendants on that basis. An adequate complaint based upon breach of contract must allege the existence of damages as a consequence of the breach. (*Allstate Insurance Co. v. Winnebago County Fair Association, Inc.* (1985), 131 Ill. App. 3d 225, 475 N.E.2d 230.) Plaintiff alleges that his damages consist of the lost opportunity to complete his urology residency program. He contends that he is entitled to damages in an amount which would allow him to withdraw from his current practice of medicine and enter a three-year program. Plaintiff urges this court to adopt as an element of damages in breach-of-contract actions the present value of the future cost to plaintiff of replacing a lost business opportunity. In support of this argument, plaintiff argues that the contract at issue was only incidentally an employment contract, and the contract is "tangible evidence of acceptance into an approved course of post-graduate medical training." Plaintiff refers us to paragraph two of the contract, which states that plaintiff "shall be employed in such a manner as to provide opportunity for the completion of educational training requirements of a urology residency. It is understood that this training year is the second year of a four year program." Plaintiff defines his "lost opportunity cost" as the amount necessary for him to withdraw from the practice of medicine in which he earns $75,000 annually, to return to a three-year residency program. Plaintiff asserts that he can no longer afford to live on a resident's salary, and "at his present age" he can no longer supplement a resident's salary with a second job.

Plaintiff admits that the loss-of-opportunity theory of contract damages has never been adopted in Illinois, but refers us to *Taylor*

*v. Bradley* (1868), 39 N.Y. 129, and *Air Technology Corp. v. General Electric Co.* (1964), 347 Mass. 613, 199 N.E.2d 538. In *Taylor,* however, the damages were restricted to the term of the contract. In *Air Technology Corp.,* the court relied on tangible factors for establishing damages for a lost business opportunity, including the approximate net amount realized by the subcontractor. The court also stated that damages could not be less than the value reasonably expended by the subcontractor and the reasonable value of the subcontractor's contribution. Similar tangible factors are not presented by plaintiff in the present case.

■ In Illinois, the purpose of damages is to place the nonbreaching party in the position he would have been in had the contract been performed, but not to place him in a better position or provide him with a windfall recovery. (*Golen v. Chamberlain Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 487 N.E.2d 121.) Speculative damages or damages not the proximate result of the breach will not be allowed. (*Schoeneweis v. Herrin* (1982), 110 Ill. App. 3d 800, 443 N.E.2d 36.) Applying these general rules of contract damages, we find no support in Illinois law for holding that the loss of business opportunity under the circumstances presented here is a cognizable element of damages. Moreover, we agree with the trial court that the language of the contract plainly states that the employment contract is for one year: "[T]he Commission shall employ [plaintiff] *** in the Department of Urology for a period of one year beginning July 1, 1976 at a salary of $12,800 per year." The contract's reference to the year being the second of a four-year program does not alter the fact that the contract only extended for the period of one year. Plaintiff's attempt to construe the loss of the residency, which he refused in 1977, as having altered his entire career is an untenable basis for awarding damages here.

■ The proper measure of damages when an employee has been wrongfully discharged is the agreed wages during the contract term, reduced by wages earned during the same period and which could not have been earned in the same employment. (*People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470.) During the year plaintiff would have worked for defendants earning $12,800, plaintiff actually earned $50,000.

■ Defendants correctly point out that any damages should be offset by plaintiff's other earnings. The employee is to be made whole by compensating him only to the extent that the wrongful deprivation of salary resulted in financial loss. Thus, the damages must be reduced by other earnings during that period if the income

would have been incompatible with his employment with defendant. (*People ex rel. Bourne v. Johnson* (1965), 32 Ill. 2d 324, 205 N.E.2d 470.) Plaintiff argues, however, that the job at which he earned $50,000 was "moonlighting" and those earnings should not reduce his damages. (See *Board of Education v. McCoy* (1984), 123 Ill. App. 3d 1065, 463 N.E.2d 1308.) The test for determining whether any primary and secondary employment was incompatible is not the amount of earnings but, rather, whether there are regulatory proscriptions of conflicting hours or duties. (*Board of Education v. Metskas* (1982), 106 Ill. App. 3d 943, 436 N.E.2d 587.) Here, defendants established the incompatibility between plaintiff's job as a resident and his second job.

The urology residency employment contract itself states that plaintiff agreed not to "seek or accept concurrent employment during the contract period." While plaintiff urges us to consider parol evidence showing that hospitals typically overlook residents' moonlighting in violation of the contract terms, we find the contract language clear and unambiguous, and we decline to consider such parol evidence. (See *W. H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 475 N.E.2d 273.) The $12,800 plaintiff lost by not working as a resident is offset by the $50,000 he earned during that time period. Thus, the trial court properly granted summary judgment in favor of defendants.

■ Plaintiff also contends that the trial court erred in dismissing his cause of action brought under the Illinois Consumer Fraud and Deceptive Business Practices Act. (Ill. Rev. Stat. 1975, ch. 121½, par. 261 *et seq.*) The purpose of the Act is to protect consumers and borrowers and businessmen against fraud and unfair or deceptive acts in the conduct of any trade or commerce. "Trade" and "commerce" are defined to include the sale of services and property or any article or thing of value. (Ill. Rev. Stat. 1975, ch. 121½, par. 261(f).) A consumer is a person who purchases merchandise in the ordinary course of his trade or business (Ill. Rev. Stat. 1975, ch. 121½, par. 261(e).) Merchandise includes objects, wares, goods, commodities, intangibles, certain real estate, or services. (Ill. Rev. Stat. 1975, ch. 121½, par. 261(b).) We agree with the trial court that under this statutory language plaintiff has failed to state a cause of action under the Act.

In *Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634, the court held that a medical school applicant was not a consumer and could not bring a cause of action under the Act. As in *Steinberg* plaintiff here cannot be considered a consumer. In *Frahm*

*v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007, this court held that the practice of law is not the equivalent of other ordinary commercial or business activities. Similarly, although the practice of medicine may have a business aspect, the commercial phases of medicine which directly affect the public are not at issue here. (See *Frahm v. Urkovich* (1983), 113 Ill. App. 3d 580, 447 N.E.2d 1007.) The practice of medicine is not the equivalent of an ordinary commercial enterprise. The statutory language making the Act applicable to trade or commerce does not include the practice of medicine as presented under the facts of this case.

Plaintiff's reliance on *Scott v. Association for Childbirth at Home* (1981), 88 Ill. 2d 279, 430 N.E.2d 1012, is misplaced. The *Scott* court held that the sale of educational services is "trade or commerce" and that buyers of educational services are consumers protected under the Act. In *Scott*, however, the Attorney General brought suit to protect the public from fraudulent schemes sold by various schools. The court carefully distinguished the holding in *Steinberg*, where no cause of action was allowed under the Act, on the basis that the Act does not redress purely private wrongs but is for practices which affect the public generally. Here, the wrong alleged is purely private and does not affect the public generally. We conclude, therefore, that the trial court properly dismissed count II of the complaint for failure to state a cause of action under the Consumer Fraud Act.

For the foregoing reasons, the judgment of the circuit court of Cook County dismissing count II of the complaint and granting summary judgment in favor of defendants as to the balance of the complaint is affirmed.

Judgment affirmed.

RIZZI, P.J., and WHITE, J., concur.