915 F.2d 273
 STANLEY GUDYKA SALES COMPANY, INCORPORATED,
Plaintiff-Appellant, and Cross-Appellee,
v.
LACY FOREST PRODUCTS COMPANY, an Oregon partnership, Lacy
Diversified Industries, Incorporated, an Indiana
corporation, Wickman Investments, an Oregon corporation,
D.T. Mitchell Investments, Incorporated, an Oregon
corporation, Ted Saunders Investments, Incorporated, an
Oregon corporation, Dan Burdett Investments, Incorporated,
an Oregon corporation and L.E. Bunger Investments,
Incorporated, an Oregon corporation, Defendants-Appellees,
and Cross-Appellants.
 Nos. 89-2810, 89-2918.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 9, 1990.
Decided Sept. 27, 1990.
 
 Albert Koretzky, Chester A. Lizak, Dimonte & Lizak, Park Ridge, Ill., Roger Goble, Goble & Axelrod, Highland Park, Ill., for plaintiff-appellant.
 Mark S. Rubin, Marc L. Fogelberg, Paul D. Frenz, McBride, Baker & Coles, Chicago, Ill., for defendants-appellees.
 Before BAUER, Chief Judge, FLAUM, and RIPPLE, Circuit Judges.
 BAUER, Chief Judge.
 
 
 1
 In this diversity suit brought on a breach of contract claim, the parties appeal and cross-appeal the district court's judgment awarding $67,221.00 in lost commissions to Plaintiff-appellant, Stanley Gudyka Sales Co., Inc. ("Gudyka" or "Gudyka Sales") and against the Defendants-appellees, Lacy Forest Products Co. ("Lacy" or "Lacy Products"), et al., for terminating Gudyka without "just cause." For the reasons stated below, we affirm.
 
 I.
 
 2
 Stanley Gudyka ("Stanley"), owns and operates Gudyka Sales, an Illinois corporation which engages in the buying and selling of lumber and related wood products. Lacy is an Oregon partnership which, like Gudyka, operates a business involved in purchasing and selling lumber and lumber products.[1] In July 1981, Lacy and Gudyka orally agreed that Gudyka would work for Lacy as an independent contractor. Lacy and Gudyka agreed to split the "net margin" (the profit) on all sales by Gudyka, while Lacy agreed to pay Gudyka $2,500 per month on a "draw" basis until commissions exceeded the advances. Under this agreement, customers paid Lacy directly and Lacy, in turn, paid Gudyka his commissions.
 
 
 3
 In late November or early December 1982, Gudyka and Lacy orally agreed to a so-called "one-customer-one-account" exception. This exception allowed Gudyka to collect commissions directly from one customer, P & E Woodworking, Inc., ("P & E"). P & E then directly invoiced Andersen Corporation ("Andersen"), one of Lacy's accounts. Under the new arrangement, Gudyka agreed to remit 50% of these commissions to Lacy. Although Gudyka received three commission checks during December 1982 and January 1983, Gudyka did not pay Lacy its percentage of the commission checks.
 
 
 4
 On February 1, 1983, Gudyka and Lacy entered into a written agreement which set forth the terms for payment of commissions as orally agreed, but did away with the advances paid to Gudyka. In addition, Gudyka and Lacy agreed to list fifteen accounts on a "protected accounts"[2] appendix to the contract. The agreement also recited that it could be terminated for just cause by either party upon 30 days' written notice. In that event, under the agreement, no non-competition clause or "exclusive customers" provision could operate against either Lacy or Gudyka.
 
 
 5
 Between December 1982 and June 1983, Gudyka received ten commission checks, totalling $5,839.82, from P & E; Gudyka never remitted the 50% or $2,919.91 which was due to Lacy for its share of the commissions. Although Lacy inquired about commissions from P & E during this time, Stanley related only that commissions were being received and that he did not know the exact amounts of the checks. A Lacy employee made a personal visit to Stanley in May 1983, and when asked for the P & E commissions, Stanley stated that he would pay Lacy directly for the full amount of commissions owed. At all times between December 1982 and June 1983, Lacy owed Gudyka substantially more in commissions from all other accounts than Gudyka owed Lacy in commissions from the P & E account. Specifically, during this time, Lacy received approximately $92,000 in commissions from sales generated by Gudyka, of which Gudyka was entitled and eventually paid approximately $46,000.
 
 
 6
 On June 14, 1983, Gudyka received a "Termination Notice" from Lacy. After noting Lacy's several attempts to obtain an "update on the commissions due," and after noting that it had waited for two weeks following the latest request for information, Lacy wrote:
 
 
 7
 We now have evidence that $5,839.82 was paid to Stanley Gudyka Sales Co. since December of 1982. These were direct commissions paid by P & E Woodworking to your company as a result of sales to the Andersen Corp. By our previous agreement and approval, ... Gudyka ... owes Lacy Forest Products $2,919.91.
 
 The letter continued:
 
 8
 The partners of Lacy ... feel very strongly that you really had no intention of reimbursing [us] for [our] share of this commission per our original agreement. If you had, you would have been issuing checks to Lacy ... right along as you received the commission checks.... From a purely technical standpoint, this puts you in clear violation of our sales agreement and gives the partners ... just cause to terminate this agreement. From a personal standpoint, we are all extremely disappointed in your actions on this matter, and our unanimous decision to terminate is final.
 
 
 9
 After issuing the termination letter, Lacy sent a check to Gudyka from which Lacy had deducted the commissions due it on the P & E account ($2,919.91 plus interest). Gudyka thereafter filed suit against Lacy, alleging breach of contract. Following a bifurcated bench trial, the district court issued separate orders ruling that Lacy terminated Gudyka without "just cause" and awarding damages to Gudyka.
 
 II.
 
 10
 On appeal, Gudyka contests the amount of damages awarded, claiming that the district court erred in 1) eliminating from the damages calculation commissions from three "protected accounts"; 2) offsetting Gudyka's damages, in part, by the amount of income it earned following its termination, even though Lacy did not raise a "failure to mitigate" defense; 3) reducing Gudyka's damages, in part, for the expenses it did not incur by virtue of not working for Lacy and using Lacy's estimated 45% expense ratio to calculate Gudyka's damages; and 4) declining to award statutory prejudgment interest. Lacy cross-appeals, contending that the district court erred in not concluding that Lacy terminated Gudyka for "just cause." In the alternative, if this court upholds the district court's conclusion that no "just cause" existed for terminating Gudyka, then Lacy submits that the district court correctly calculated Gudyka's damages.
 
 
 11
 In analyzing the district court's judgment, we will not disturb the district court's findings of fact unless they are "clearly erroneous." Fed.R.Civ.P. 52(a); Anderson v. City of Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985); Ipec Inc. v. Int'l Lithographing Corp., 869 F.2d 1080, 1083 (7th Cir.1989). In addition, we may not reweigh the evidence, and "[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety," we must uphold the district court's decision. Ipec Inc., 869 F.2d at 1083 (quoting Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511).
 
 A. Just Cause
 
 12
 We consider first the issue Lacy raises on cross-appeal, that is, whether the district court erred in reaching the conclusion that Lacy terminated Gudyka without "just cause." The district court analyzed Lacy's termination of Gudyka under the "doctrine of conditions," which allows a party to a contract to terminate the contract as a "self-help remedy" when another party has breached the agreement. See Casio, Inc. v. S.M. & R. Co., Inc., 755 F.2d 528, 532 (7th Cir.1985). As the district court noted, this self-help remedy is only available where termination is in proportion to the "need" for accountability from the breaching party, and where the breach is material rather than "insignificant." Id. at 532. The district court determined that Lacy's use of the "self-help remedy" of terminating Gudyka in this case was not proportional to its need and that the amount Gudyka owed to Lacy, as compared with the amounts Lacy owed Gudyka, was an "insignificant" breach. In addition, the court found that because Lacy knew how much Gudyka owed it, Lacy was obligated to give Gudyka notice and an opportunity to cure its breach. In the event that Gudyka did not cure, Lacy still had the alternative self-help remedy of deducting (as it later did deduct) the amount owed on the P & E accounts from a commission check. Without having given notice and an opportunity to cure, the district court determined that Lacy terminated Gudyka without "just cause."
 
 
 13
 Lacy argues that the court erred in applying the "doctrine of conditions" to this case, that there is no right to cure in this case, and that there was just cause for Lacy to terminate Plaintiff. Lacy contends first that the "doctrine of conditions" has little or no applicability here because Gudyka was Lacy's agent, and therefore, agency principles should apply; Lacy claims that those principles, in essence, stand for the proposition that any withholding or concealing of funds due to a principle establishes "just cause" for terminating an agency relationship. Cf. Blanchard v. Lewis, 414 Ill. 515, 524, 112 N.E.2d 167, 172 (1953); Restatement (Second) of Agency Sec. 409 comment b (1977).
 
 
 14
 We do not disagree with Lacy's discussion of agency law, however, we do disagree with Lacy that the terms of the contract may be avoided based on agency principles. Lacy terminated Gudyka for the stated reason that it failed to promptly remit Lacy's share of commissions from P & E. As the district court found, this breach of the agreement calls into play the "doctrine of conditions." See Casio, Inc., 755 F.2d at 532. The "doctrine of conditions," however, is not a tool which will "permit a party to ... us[e] an insignificant breach as a pretext for avoiding his contractual obligations." Id. at 532 (quoting Farnsworth, Contracts Sec. 8.15, at p. 607 (1982)). It is proper to consider proportionality in assessing the availability of the "doctrine of conditions." See id. at 532; Circle Security Agency, Inc. v. Ross, 107 Ill.App.3d 195, 202-03, 63 Ill.Dec. 18, 23, 437 N.E.2d 667, 672 (1st Dist.1982). Here, the district court found, and we agree, that Lacy's termination of Gudyka was clearly out of proportion as a response to Gudyka's owing Lacy less than $3,000 in commissions. Accordingly, we determine that the district court's findings in this regard are not clearly erroneous.
 
 
 15
 Lacy additionally argues that the district court erred in discrediting its claim that it suffered a "loss of trust" in Gudyka which supported its termination decision. Lacy argues that this basis for terminating Gudyka is reflected implicitly, if not explicitly, in its termination letter. The district court considered the testimony and all the evidence on this claimed "loss of trust," found that the witnesses lacked credibility and determined that the defense was an improper attempt by Lacy to "mend its hold." See Larson v. Johnson, 1 Ill.App.2d 36, 116 N.E.2d 187 (1st Dist.1953). The district court is entitled to make credibility determinations, and we give great deference to those findings on appeal. See Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511; AMP Inc. v. Fleischhacker, 823 F.2d 1199, 1207 (7th Cir.1987). We conclude that those findings are not clearly erroneous in the face of all of the pleadings.
 
 
 16
 Finally, we note that the district court found that Lacy had several options which it could have taken short of termination. Lacy takes exception to both options (notice and an opportunity to cure and taking an accounting) suggested by the district court. Although we have not discovered any Illinois case requiring a non-breaching party to provide notice and an opportunity to cure in circumstances similar to this case, this requirement comports with general contract theory and we agree with the district court's decision imposing this requirement on Lacy. See, e.g., Chemetron Corp. v. McLouth Steel Corp., 522 F.2d 469, 474 & n. 2 (7th Cir.1975). We also note that Lacy claims that it could not avail itself of the option of taking an accounting and deducting the amount owed from a commission check because Gudyka kept concealed the amounts due to Lacy. This is an incredible position, especially when one considers that Lacy conducted other transactions with P & E and Andersen, and knew the exact amount owed to it prior to issuing the Termination Notice, and finally that it did actually deduct the amount owed from a commission check. In sum, we affirm the district court's judgment finding that Lacy terminated Gudyka without "just cause."
 
 B. Damages
 
 17
 On appeal, we review the district court's assessment of damages only to determine whether the district court's judgment is clearly erroneous. Hunter v. Allis-Chalmers Corp., Engine Div., 797 F.2d 1417, 1420 (7th Cir.1986). Gudyka challenges the district court's damages award on four grounds. First, Gudyka argues that the court erred in excluding as an element of damages the amount of commissions earned by Lacy based on sales by Dan Burdett ("Burdett") to three "protected accounts," those accounts being Andersen, Combination Door, and Morgan. Gudyka claims that these accounts remained on his "protected account" list since Lacy breached the agreement by terminating Gudyka without "just cause." Gudyka argues that Lacy cannot take advantage of the contract term which provided for removing accounts from the "protected account" list in the event of termination or if the accounts were not being properly developed. See Robinhorne Constr. Corp. v. Snyder, 113 Ill.App.2d 288, 251 N.E.2d 641, 645 (4th Dist.1969).
 
 
 18
 Contrary to Gudyka's assertions, the district court did not "allow" Lacy to take the benefit from the written contract despite its breach of the agreement. Rather, the district court determined that Burdett, who joined Lacy in 1984, long after Gudyka was terminated, had a pre-existing relationship or developed a relationship with these customers on his own which allowed Burdett to generate the sales to the various accounts. The court also found that these sales occurred solely from the efforts of Burdett, and would not have occurred if Gudyka had been kept on by Lacy. We note that in support of this, the district court found that in each case, the accounts had either little or no activity for greater than five months dating back from the date of termination. Based on our review of the records, we conclude that the district court's findings in this regard are not clearly erroneous. See Feldstein v. Guinan, 148 Ill.App.3d 610, 612-13, 101 Ill.Dec. 947, 949, 499 N.E.2d 535, 537 (1st Dist.1986) ("the purpose of damages is to place the nonbreaching party in the position he would have been in had the contract been performed, but not to place him in a better position or provide him with a windfall recovery") (citations omitted).
 
 
 19
 As for Gudyka's challenge under the terms of the contract, we are unpersuaded that these accounts remained "protected" following Gudyka's termination. Although the contract was terminated without just cause, and although Andersen, Combination Door and Morgan were all listed as Gudyka's protected accounts, the activity on these accounts ceased for a substantial period of time and was not resumed until Lacy hired Burdett. It was Burdett who developed relationships with others connected to the industry which generated sales to these accounts. In light of this, we conclude that the district court properly excluded from the damages award the amount of commissions earned by Burdett solely from his efforts with Andersen, Combination Door, and Morgan following Gudyka's termination.
 
 
 20
 Next, Gudyka argues that the district court improperly reduced its damages by the amount of income it earned following its termination by Lacy. Gudyka argues that Lacy is not entitled to this offset since it failed to raise the affirmative defense of "failure to mitigate." See A.D.E., Inc. v. Louis Joliet Bank & Trust Co., 742 F.2d 395, 397 (7th Cir.1984) (citing Camalier & Buckley-Madison, Inc. v. Madison Hotel, Inc., 513 F.2d 407, 420 n. 92 (D.C.Cir.1975)). This is a significant issue since Gudyka earned substantially less following the termination, and Lacy's failure to raise the issue could provide Gudyka with a much larger damage award.
 
 
 21
 Initially, in this regard, we note that Gudyka continues to press this claim despite the district court's well-reasoned explanation, in its order issued between the liability and damages phases of the trial, that allowing Gudyka to receive damages without considering its post-termination earnings would create a double recovery for Gudyka to which it is not entitled. See Feldstein, 148 Ill.App.3d at 613, 101 Ill.Dec. at 949, 499 N.E.2d at 537; Hayes v. Preferred Risk Mutual Ins. Co., 66 Ill.App.3d 112, 22 Ill.Dec. 861, 383 N.E.2d 669 (5th Dist.1978).
 
 
 22
 Furthermore, we note that the district court, prior to its ruling, requested both parties to submit briefs on whether Lacy adequately raised the issue of Gudyka's "failure to mitigate." According to the court, neither brief was satisfactory. On its own, the court found that Gudyka was incorrect in claiming Lacy was not entitled to the offset for actual earnings. Specifically, the court found that Lacy raised the issue of the offset of actual earnings in its proposed Final Pre-Trial Order (FPTO) and that that was sufficient for the court. See, e.g., First Commodity Traders v. Heinold Commodities, 766 F.2d 1007, 1013 (7th Cir.1985). Even so, the court concluded that Lacy failed to raise the "failure to mitigate" defense, that is, potential earnings as well as actual earnings and therefore refused to allow Lacy to receive an offset for potential earnings. See A.D.E., Inc., 742 F.2d at 397. The district court's rationale and conclusion find support under Illinois law. See Hayes, 66 Ill.App.3d at 115, 22 Ill.Dec. at 865, 383 N.E.2d at 673. In light of this and the entire record, we conclude that the district court properly held that Gudyka was not entitled to a double recovery and that Lacy was entitled to an offset for Gudyka's actual but not potential earnings following its termination.
 
 
 23
 Third, Gudyka argues that the district court erred in considering its expenses as an element offsetting its damages because Gudyka claims that its commissions were more akin to "wages" to an "employee" than to "profits" for an independent contractor or joint venturer. Gudyka also claims that the court erred in reducing its damages based on Lacy's estimate of Gudyka's projected expenses, which Gudyka claims was speculative.
 
 
 24
 Initially, we disagree with Gudyka's characterization of its relationship with Lacy. By its very terms, the written agreement describes Gudyka as an "independent contractor," responsible for paying its own expenses. Furthermore, the agreement describes a splitting of "net margin," which is essentially the after-costs profit on sales of lumber. Finally, under Illinois law, it is correct to consider expenses in a breach of contract action for profits and to offset damages (gross earnings) by the amount of expenses which would have been incurred in generating that income. See Rivenbark v. Finis P. Ernest, Inc., 37 Ill.App.3d 536, 539, 346 N.E.2d 494, 497 (5th Dist.1976); Vogue Models, Inc. v. Reina, 6 Ill.App.3d 211, 212, 285 N.E.2d 256, 257 (1st Dist.1972). Gudyka's alternative challenge to the district court's use of Lacy's 45% expense ratio is also unfounded. As the district court noted, Gudyka failed to provide adequate support for its proposed expense ratio. Finding this, the court turned to Lacy's proposals, one being a 66.9% expense ratio based on its own calculations, the other, a 45% expense ratio based on actual tax returns for "the entire period." The district court concluded that the latter had a "reasonable predicate in the evidence," based on the court's assessment of the testimony at trial regarding Gudyka's expenses. Gudyka's arguments fail to provide any reason for concluding that the district court's reliance on Lacy's expense ratio was improper. Based on all the evidence, we conclude that the district court did not err in reducing Gudyka's damages by the 45% expense ratio submitted by Lacy.
 
 
 25
 Finally, Gudyka argues that it is entitled to prejudgment interest under Ill.Rev.Stat. ch. 17, p 6402, because it contends that the amount of damages in this case is "easily ascertainable." The district court correctly noted that under Illinois law, litigants are entitled to prejudgment interest if the damages are liquidated and capable of easy calculation. See Alguire v. Walker, 154 Ill.App.3d 438, 107 Ill.Dec. 279, 506 N.E.2d 1334 (5th Dist.1987); Kemnetz v. Elliott Farmers Grain Co., 136 Ill.App.3d 226, 230-31, 90 Ill.Dec. 793, 797, 482 N.E.2d 1076, 1080 (4th Dist.1985); cf. Gorenstein Enterprises, Inc. v. Quality Care-USA, Inc., 874 F.2d 431, 436 (7th Cir.1989) (announcing general rule that prejudgment interest is "presumptively available" in federal court). As the district court found, "here the only common ground between the parties was the applicable formula--50% of the net between the amounts claimed by Gudyka and the amounts acknowledged by Lacy ..., and neither of those figures" is close to the amount calculated as damages by the district court. In addition, central to this appeal are questions over the proper measure of damages. These are more than adequate reasons for finding that the damages here were not liquidated, and thus, we conclude that the district court properly denied Gudyka an award of prejudgment interest.
 
 III.
 
 26
 In summary, we affirm the district court and deny Lacy Forest Products Co.'s cross-appeal. We conclude that the district court properly found that Lacy terminated Stanley Gudyka Sales Co., Inc. without "just cause" as required by their agreement. We also uphold the judgment of the district court awarding to Gudyka damages in the amount of $67,221.00, and excluding damages on commissions earned by Burdett on the "protected accounts," and offsetting damages for income earned by Gudyka following its termination. Finally, we affirm the district court's judgment determining Gudyka's expenses based on Lacy's submitted 45% expense ratio, and affirm the court's denial of prejudgment interest.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 Lacy is in partnership with the other named defendants, which are all non-Illinois partnerships or corporations. For simplicity, we refer collectively to all defendants-cross-appellants as "Lacy."
 
 
 [2]
 "Protected accounts" refers to accounts which were developed by Gudyka and could not be solicited by others employed by Lacy or its affiliates. The February 1983 agreement specified that these accounts could be withdrawn from this protection if they were not being timely developed or upon termination