2023 IL App (1st) 221703

No. 1-22-1703

Opinion filed November 22, 2023

Third Division

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SHANTON MATHIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County. |
| | ) | |
| v. | ) | No. 20 L 11914 |
| | ) | |
| HELIN YILDIZ, DDS; D2 DENTAL OF ILLINOIS, | ) | |
| P.C., d/b/a Destiny Dental; and D2 DENTAL OF | ) | |
| LANSING, P.C., d/b/a Destiny Dental | ) | Honorable |
| | ) | Kathy M. Flanagan and |
| Defendants-Appellees. | ) | Thomas More Donnelly, |
| | ) | Judges, presiding. |

_____

JUSTICE R. VAN TINE delivered the judgment of the court, with opinion.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment and opinion.

**OPINION**

¶ 1     Plaintiff Shanton Mathis appeals from the dismissal of her claims under the Illinois

Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1

*et seq.* (West 2018)) against her dentist, Dr. Helin Yildiz, and the dental practice that employed

Yildiz, Destiny Dental. The circuit court dismissed Mathis's claims on the basis that the Consumer

Fraud Act does not allow causes of action arising from the provision of dental services. On appeal,

Mathis argues that Illinois caselaw barring Consumer Fraud Act claims arising out of the provision

of dental services is wrongly decided. For the following reasons, we affirm in part, reverse in part, and remand this matter for further proceedings.

¶ 2                                                     I. BACKGROUND

¶ 3      Mathis sued her dentist, Yildiz, and Yildiz's employer, D2 of Lansing, which does business as Destiny Dental.[1] The circuit court dismissed Mathis's initial complaint but granted her leave to amend. This appeal challenges only the dismissal of counts I, II, and III of the first amended complaint and count IX of the second amended complaint, all of which were Consumer Fraud Act claims.

¶ 4                                          A. First Amended Complaint

¶ 5      Mathis's first amended complaint alleged that her dental insurance was a Medicaid replacement plan that did not cover the repair or replacement of crowns or fillings. On November 14, 2018, Mathis visited Yildiz, complaining of a filling in tooth 19 that another dentist installed earlier that year.[2] Yildiz recommended that Mathis receive a replacement filling, despite knowing that Mathis's insurance would not cover such a procedure.[3] On January 7, 2019, Yildiz falsely told Mathis that she was going to place a filling in tooth 19 and that Mathis's insurance would cover it. Instead, Yildiz used a drill to create enough damage to tooth 19 such that repairs to the tooth might qualify for coverage under Mathis's insurance. Yildiz then required Mathis to sign a treatment plan

---

[1]Mathis's initial complaint also named D2 of Illinois as a defendant, but her first and second amended complaints contained no allegations against D2 of Illinois. One of Mathis's later filings stated that written discovery revealed that D2 of Illinois did not employ Yildiz and was not involved in this matter.

[2]Tooth 19 is the first molar on the lower left jaw. *Kalola v. Eisenberg*, 781 A.2d 77, 79(N.J. Super. 2001).

[3]Mathis's complaints are not clear about whether Yildiz recommended installation of a crown or a filling. We set out the allegations as they appear in the complaints but, ultimately, this distinction does not affect our resolution of this appeal.

that mandated Mathis to pay $600 out-of-pocket to complete work on tooth 19 if her insurance did not cover it. Destiny Dental submitted post-drilling X-rays of tooth 19 to Mathis's insurer, falsely claiming that the X-rays showed the condition of the tooth when Mathis arrived. According to Mathis, "[t]he sole purpose of drilling into tooth #19 was to create the evidence necessary to defraud [her] insurer," and Yildiz intended Mathis's insurer to rely on the X-rays to provide coverage that was not actually warranted. Yildiz never installed a crown or a filling, and Mathis suffered pain for several months until she paid another dentist to repair the damage that Yildiz caused.

¶ 6    Mathis structured the counts of her first amended complaint in pairs on each theory of liability, one against Yildiz individually and one against Destiny Dental as her employer. Counts I and II alleged violation of the Consumer Fraud Act by "balance billing," *i.e.*, requiring Mathis to pay out-of-pocket to complete work on tooth 19 if her insurance did not cover it. Mathis alleged that "Yildiz was prohibited from balance billing a Medicaid recipient for non-approved work that began prior to authorization." Specifically, the Dental Office Reference Manual provided that, by working on tooth 19 without authorization from Mathis's insurer, Yildiz assumed financial responsibility for the procedure and could not balance bill Mathis.[4]

¶ 7    Mathis mislabeled two counts of her first amended complaint as count III, one against Yildiz and one against Destiny Dental. Both versions of count III alleged violation of the Consumer Fraud Act for "drilling," *i.e.*, that Yildiz drilled into tooth 19 without a legitimate medical purpose and to defraud Mathis's insurer into covering dental work that would not otherwise qualify for

---

[4]Mathis alleged that the Dental Office Reference Manual is an Illinois Department of Healthcare and Family Services document that governs the provision of services to and billing of patients with Medicaid replacement dental insurance plans, such as her.

coverage. Mathis alleged that "Yildiz'[s] deceptive conduct occurred in the conduct of a trade or commerce because the people of the State of Illinois are directly and indirectly affected by insurance fraud through increased premiums and squandering of scarce public resources" and because "Yildiz was providing a service to [Mathis]."

¶ 8    Defendants moved to dismiss the first amended complaint. They argued that the court should dismiss counts I, II, and III, pursuant to section 2-619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2-619(a)(9) (West 2018)), because "trade and commerce" under the Consumer Fraud Act excludes dental practice. Defendants also contended that the court should dismiss those counts, pursuant to section 2-615 (*id*. § 2-615), as Mathis failed to meet the heightened pleading standard for fraud claims. Mathis argued that the Consumer Fraud Act applied because she alleged fraudulent billing regardless of the quality of treatment.

¶ 9    The court granted defendants' motion to dismiss the first amended complaint pursuant to section 2-619(a)(9). The court explained that, although Mathis "set forth allegations which fall within the general scope of the elements required under the [Consumer Fraud] Act, she continue[d] to allege a claim which involves the provision of dentistry services and, therefore, there can be no recovery for her claims under the [Consumer Fraud] Act." That is, any business-related fraud arose from Yildiz's "professional negligence in treating [Mathis's] tooth problem and providing improper dental treatment." The court cited *Tkacz v. Weiner*, 368 Ill. App. 3d 610 (2006), and *Ripes v. Schlechter*, 2017 IL App (1st) 161026, in support of this conclusion. However, the court rejected defendants' section 2-615 argument and granted Mathis leave to amend her complaint.

¶ 10                              B. Second Amended Complaint

¶ 11    Mathis's second amended complaint realleged the counts of the first amended complaint.[5] It also added count IX, which alleged violation of the Consumer Fraud Act against Yildiz for presenting Mathis with a "treatment plan that stated [Mathis] was required to pay $600 to complete work on tooth #19 despite actual knowledge that requiring [her] to pay $600 for the work violated the billing agreement entered into with [her] insurance company." According to Mathis, this "deceptive conduct caused [her] to suffer pecuniary damage because she incurred bills from subsequent treating dentists because she did not know she was entitled to the crown free of charge." Count IX made the same allegations as the first amended complaint regarding Yildiz's conduct occurring in "trade and commerce."

¶ 12    Yildiz moved to dismiss count IX on the same grounds she raised earlier, *i.e.*, that count IX was a dental malpractice claim that was not cognizable under the Consumer Fraud Act and was insufficiently pled. The court dismissed count IX pursuant to section 2-615. An email from the court to the parties, in which the court explained its ruling so that the parties could prepare an appropriate order, and which is included in the record on appeal, states that

> "[c]ount IX of the second amended complaint fails to state a cause of action under the
>
> Consumer Fraud Act. The plaintiff has been given clear guidance and this is the last attempt

---

[5]The other counts common to the first and second amended complaints were battery and fraudulent misrepresentation against both Yildiz and Destiny Dental. The circuit court dismissed the battery and fraudulent misrepresentation counts because they were essentially claims of dental malpractice that plaintiff failed to support with a health professional's affidavit, as required by section 2-622(a) of the Code of Civil Procedure (735 ILCS 5/2-622(a) (West 2018)). The dismissal of those counts is not at issue in this appeal.

to try and circumvent the provisions of the [Consumer Fraud] Act which state that the practice of medicine, dentistry and law do not constitute trade or commerce."[6]

¶ 13    Mathis voluntarily withdrew the remaining counts, the court entered judgment in defendants' favor, and Mathis timely appealed.

¶ 14                                    II. ANALYSIS

¶ 15    On appeal, Mathis argues that the circuit court erred in dismissing her Consumer Fraud Act claims pursuant to sections 2-615 and 2-619(a)(9).

¶ 16    A section 2-615 motion to dismiss challenges the legal sufficiency of a complaint by alleging defects that are apparent on the face of the complaint. *Rehfield v. Diocese of Joliet*, 2021 IL 125656, ¶ 20; 735 ILCS 5/2-615(a) (West 2018). In ruling on such a motion, a court must take all well-pled facts as true and determine whether the facts alleged, viewed in the light most favorable to the plaintiff, state a cause of action upon which relief may be granted. *Rehfield*, 2021 IL 125656, ¶ 20. A court should not dismiss a complaint pursuant to section 2-615 unless no set of facts can be proved that would entitle the plaintiff to recovery. *Id.*

¶ 17    A section 2-619(a)(9) motion to dismiss admits the legal sufficiency of the complaint but raises an affirmative defense or other matter that defeats the plaintiff's claims. *Rehfield*, 2021 IL 125656, ¶ 21; 735 ILCS 5/2-619(a)(9) (West 2018). The affirmative matter " 'must be apparent on the face of the complaint' or 'be supported by affidavits or certain other evidentiary materials.' " *Rehfield*, 2021 IL 125656, ¶ 21 (quoting *Van Meter v. Darien Park District*, 207 Ill. 2d 359, 377 (2003)). A court deciding a section 2-619(a)(9) motion must interpret all pleadings and supporting

---

[6]As we explain below, no provision of the Consumer Fraud Act states that the practices of medicine, dentistry, and law do not constitute trade or commerce. However, some Illinois caselaw has held this.

documents in the light most favorable to the plaintiff. *Id.* On review, we consider whether the dismissal was proper as a matter of law. *Id.* ¶ 23. Our standard of review for a dismissal under either section 2-615 or 2-619 is *de novo* (*id.*), meaning that we perform the same analysis as the circuit court (*Kapotas v. Better Government Ass'n*, 2015 IL App (1st) 140534, ¶ 26).

¶ 18          A. The Consumer Fraud Act's Applicability to the Dental Industry

¶ 19    The circuit court dismissed Mathis's Consumer Fraud Act claims because First District caselaw does not allow a plaintiff to bring a Consumer Fraud Act claim that arises out of the provision of dental services. See *Tkacz*, 368 Ill. App. 3d at 613. Mathis argues that the caselaw establishing this rule was wrongly decided because it was not based on the language of the statute.

¶ 20    The Consumer Fraud Act provides that

> "unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material act, with the intent that others rely on the concealment, suppression or omission of such material fact *** in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby." 815 ILCS 505/2 (West 2018).

The Consumer Fraud Act defines "trade" and "commerce" as "the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." *Id*. § 1(f). The elements of a claim under the Consumer Fraud Act are (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deceptive act or practice, and

(3) the occurrence of the deception during a course of conduct involving trade or commerce. *Sheffler v. Commonwealth Edison Co.*, 2011 IL 110166, ¶ 62.

¶ 21     In interpreting a statute, our primary objective is to ascertain and give effect to the legislature's intent. *Corbett v. County of Lake*, 2017 IL 121536, ¶ 30. The best indicator of the legislature's intent is the statutory language itself, given its plain and ordinary meaning. *Id.* If the language is unambiguous, the statute should be applied as written. *Dynak v. Board of Education of Wood Dale School District 7*, 2020 IL 125062, ¶ 16. A statute is ambiguous if it is subject to more than one reasonable interpretation. *Id.*

¶ 22     The Consumer Fraud Act applies to the "distribution of *any* services" by "*any* natural person or *** company [or] business entity." (Emphases added.) 815 ILCS 505/1(c), (f) (West 2018). Yildiz is a natural person, and Destiny Dental is a business entity. They both provide dental services. Furthermore, the Act provides that "*[a]ny person* who suffers actual damage as a result of violation of this Act committed by *any other person* may bring an action against such person." (Emphasis added.) *Id*. § 10a. That language includes patients and dentists, both of whom are "persons." The Act's only mention of dentists or dental practice is a section that defines an "insurance card" as "a card that a person or entity provides to an individual so that the individual may present the card to establish the eligibility of the individual *** to receive health [or] dental *** insurance benefits." *Id*. § 2QQ. The Act contains no provision that excludes dentists or their practices. Therefore, we find that the unambiguous language of the Consumer Fraud Act includes claims against dentists and their practices, such as Mathis's claims against Yildiz and Destiny Dental.

¶ 23   Despite this statutory language, Illinois state courts have established a rule that "trade or commerce" excludes medicine, dentistry, and law and that plaintiffs cannot bring Consumer Fraud Act claims arising out of the provision of medical, dental, or legal services. *Ripes*, 2017 IL App (1st) 161026, ¶ 20. State courts have used this "rule" differently from the federal courts. For example, this court has held that the Consumer Fraud Act does not apply to the practices of medicine or law. *Feldstein v. Guinan*, 148 Ill. App. 3d 610, 615 (1986) (medicine); *Frahm v. Urkovich*, 113 Ill. App. 3d 580, 585 (1983) (law). But, according to federal courts, it *does* apply to medical billing and contracts for medical services.[7] *Gadson v. Newman*, 807 F. Supp. 1412, 1417-18 (C.D. Ill. 1992); *Allstate Insurance Co. v. Spine Centers Institute, Inc.*, No. 09 C 1703, 2010 WL 11651389, at *4 (N.D. Ill. Mar. 23, 2010). Similarly, this court has held that the Consumer Fraud Act does not apply to dentistry. *Tkacz*, 368 Ill. App. 3d at 613. However, federal authority holds that the Act does apply to claims of fraud related to dental billing. *Dent-a-Med, Inc. v. Lifetime Smiles, P.C.*, No. 04 C 4780, 2007 WL 9815947, at *2 (N.D. Ill. June 4, 2007). As these cases show, federal courts allow Consumer Fraud Act claims premised on the *business* of medicine and dentistry, such as misleading billing, as opposed to the *practice* of medicine and dentistry, such as substandard treatment. This court has acknowledged this distinction but has barred Consumer Fraud Act claims arising out of the provision of dental and medical services even if those claims focus on billing practices. See, *e.g.*, *Ripes*, 2017 IL App (1st) 161026, ¶ 21; *Tkacz*, 368 Ill. App. 3d at 614. However, the Third District has allowed a Consumer Fraud Act claim against a hospital for balance billing, which we discuss further below. *Falls v. Silver Cross Hospital & Medical Centers*, 2016 IL App (3d) 150319, ¶¶ 38-40. For now, we must decide

---

[7]Federal courts' interpretation of state law can be persuasive authority, but we are not bound by it. *Firebirds International, LLC v. Zurich American Insurance Co.*, 2022 IL App (1st) 210558, ¶ 21.

whether to follow First District caselaw—namely, *Frahm*, *Feldstein*, *Tkacz*, and *Ripes*—that completely bars Consumer Fraud Act claims that arise out of the provision of medical, dental, and legal services.

¶ 24 We are persuaded that, even if the Consumer Fraud Act does not apply to the actual practice of dentistry, it does apply to the business aspects of the dental industry. As explained above, the plain language of the Consumer Fraud Act includes the dental industry and expresses no intent to exclude dentists or their businesses.[8] The Consumer Fraud Act also states that it "shall be liberally construed" (815 ILCS 505/11a (West 2018)), which "provides a clear mandate to Illinois courts to utilize the [Consumer Fraud] Act to the greatest extent possible to eliminate all forms of deceptive or unfair business practices and [to] provide appropriate relief to consumers" (*Totz v. Continental Du Page Acura*, 236 Ill. App. 3d 891, 901 (1992)). Reasonable construction "to the greatest extent possible" (*id.*) requires including, not excluding, the dental industry. Moreover, the Illinois Dental Practice Act (225 ILCS 25/1 *et seq.* (West 2018)) allows dentists to advertise, and "advertising" is one of the forms of "trade" and "commerce" to which the Consumer Fraud Act applies (815 ILCS 505/1(f) (West 2018)). It would be illogical for Illinois law to allow dentists to advertise while exempting them from a statute that applies to advertising.

¶ 25 *Tkacz*'s exclusion of the dental industry from the Consumer Fraud Act is an extension of earlier cases holding that the Act applies only to "ordinary commercial enterprises." (Internal quotation marks omitted.) *Tkacz*, 368 Ill. App. 3d at 614. *Tkacz* relied on *Frahm*, which held that the practice of law is not an "ordinary commercial enterprise" to which the Consumer Fraud Act

---

[8]Justice Greiman agreed with this view in his special concurrence in *Tkacz*: "[T]he plain language of the [Consumer Fraud] Act provides that it applies to those involved in trade or commerce and does not specifically exempt from its ambit the medical, dental and legal professions." *Tkacz*, 368 Ill. App. 3d at 615 (Greiman, J., specially concurring).

applies, and *Feldstein*, which held that the practice of medicine also is not an "ordinary commercial enterprise" to which the Consumer Fraud Act applies. *Frahm*, 113 Ill. App. 3d at 584; *Feldstein*, 148 Ill. App. 3d at 615. However, the term "ordinary commercial enterprise" does not appear in the Consumer Fraud Act. 815 ILCS 505/1 *et seq.* (West 2018). *Frahm* erroneously created that limitation.

¶ 26    Furthermore, *Frahm*, *Feldstein*, and *Ripes* are premised on the now-defunct requirement that a Consumer Fraud Act claim must "reach practices of the type which affect consumers generally and is not available as an additional remedy to redress a purely private wrong." *Frahm*, 113 Ill. App. 3d at 586; *Feldstein*, 148 Ill. App. 3d at 615 (Consumer Fraud Act claim was properly dismissed where "the wrong alleged is purely private and does not affect the public generally"); *Ripes*, 2017 IL App (1st) 161026, ¶ 21 ("the wrong alleged by [the plaintiff] is a purely private wrong and does not affect the public generally"). However, the legislature abolished this "public injury requirement" in 1990 by amending the Consumer Fraud Act to provide that "[p]roof of a public injury, a pattern, or an effect on consumers generally shall not be required." Pub. Act 86-801 (eff. Jan. 1, 1990) (amending Ill. Rev. Stat. 1991, ch. 121½ , ¶ 270a(a)); see also *Royal Imperial Group, Inc. v. Joseph Blumberg & Associates, Inc.*, 240 Ill. App. 3d 360, 363 (1992). The legislature amended the Act again in 1996 to require that a plaintiff must show a public injury only in cases against new or used vehicle dealers. Pub. Act 89-144 (eff. Jan. 1, 1996) (amending 815 ILCS 505/10a(a)); *Benzakry v. Patel*, 2017 IL App (3d) 160162, ¶ 76. The "public injury requirement" remains abolished for all Consumer Fraud Act cases not involving vehicle dealers. *Benzakry*, 2017 IL App (3d) 160162, ¶ 77; see also *Grimaldi v. Webb*, 282 Ill. App. 3d 174, 182

(1996). Post-1990 cases such as *Ripes* continue to repeat the "public injury requirement" as though it still exists in Consumer Fraud Act cases, but it does not due to the action of the legislature.

¶ 27    Excluding the dental industry from the Consumer Fraud Act is contrary to the will of the legislature and the wording of the statute. In reality, dental practices are for-profit businesses and have paying customers. As Justice Greiman explained, "dentists *** are no different from other business people. They are part of the stream of commerce and are engaged in the sale of services." *Tkacz*, 368 Ill. App. 3d at 615 (Greiman, J., specially concurring). Dentists themselves recognize that they must maintain a "balance between the roles of doctor and businessperson." Bruce S. Graham, *Is Dentistry a Business or a Profession?* (Sept. 1, 2005), www.https://oralhealthgroup.org/features/is-dentistry-a-business-or-a-profession [https://perma.cc/XD4C-5243].[9] The idea that the dental industry is somehow outside the stream of trade and commerce is archaic and not based in reality. This concept appears to be premised on the belief that the business of dentistry is not like plumbing or carpentry. In truth, dentists, plumbers, and carpenters all exercise judgment in their work, and they all bill their customers.

¶ 28    We hold that the Consumer Fraud Act applies to the business aspects of dentistry.[10] We limit this holding to the business aspects of dentistry out of respect for the doctrine of *stare decisis*,

---

[9]This article was originally an address that Dr. Bruce S. Graham gave to the American College of Dentists on September 30, 2004. Dr. Graham is a founder of the American Dental Educational Association Leadership Institute, has been a dental educator for 42 years, and served as the dean of the University of Illinois Chicago College of Dentistry from 2000 to 2013 and the dean of the University of Detroit Mercy School of Dentistry from 1992 to 2000. Bruce S. Graham, DDS, MS, Med, University of Illinois Chicago College of Dentistry, www.https://dentistry.uic.edu/profiles/bruce-s-graham/ (last visited Nov. 14, 2023) [https://perma.cc/3P8U-WLU2].

[10]To be clear, we do not overrule *Tkacz* or any of the other cases discussed in this opinion because only our supreme court has that authority. See *Gillen v. State Farm Mutual Automobile Insurance Co.*, 215 Ill. 2d 381, 392 n. 2 (2005). We simply choose not to follow the majority in *Tkacz* or its predecessors, which we have authority to do. See *id.*

which provides that the law should not change suddenly and erratically but should develop in a principled and intelligible fashion. *Coleman v. East Joliet Fire Protection District*, 2016 IL 117952, ¶ 53. We question whether the Consumer Fraud Act's inclusion of "any services" (815 ILCS 505/1(f) (West 2018)) does, in fact, exclude claims of dental malpractice, but we do not go so far as to say that the Consumer Fraud Act is a means to hold dentists liable for malpractice. Rather, we follow the Third District and federal courts' approach. The Consumer Fraud Act includes claims premised on the business aspects of dentistry, but not claims based on the practice of dentistry itself. *Falls*, 2016 IL App (3d) 150319, ¶ 40; *Dent-a-Med*, 2007 WL 9815947, at *2.[11]

¶ 29    Destiny Dental argues that *Cripe v. Leiter*, 184 Ill. 2d 185 (1998), exempts from the Consumer Fraud Act all claims involving "professional services." However, *Cripe* addressed only the Consumer Fraud Act's application to the legal profession. *Cripe*, 184 Ill. 2d at 198. Furthermore, *Cripe*'s exclusion of the legal profession from the Consumer Fraud Act is based on characteristics that are unique to lawyers. For example, *Cripe* explained that the Illinois Supreme Court has the exclusive authority to regulate lawyers and, to that end, has adopted the Rules of Professional Conduct, which regulate the fees that lawyers charge their clients. *Id.* at 195-96. That reasoning does not apply to dentists because the Illinois Supreme Court does not regulate dentists. Nevertheless, *Tkacz* erroneously extended that rationale to dentists, finding that dentistry is not "trade or commerce" because it is regulated by the Illinois Department of Financial and Professional Regulation. *Tkacz*, 368 Ill. App. 3d at 615. Just because an industry is subject to regulation does not automatically render it exempt from the Consumer Fraud Act. *Id.* (Greiman,

---

[11]We recognize that the facts of *Falls* are not identical to this case. However, as explained below, *Falls* illustrates how a plaintiff can assert a Consumer Fraud Act claim against a health provider without alleging that the provider committed malpractice. It is at least possible that Mathis can replead her Consumer Fraud Act claim in an analogous manner.

J., specially concurring) (explaining that both plumbers and dentists are regulated by the State yet can still defraud customers to increase their own profits). The Department of Financial and Professional Regulation regulates more than 120 professions. Professions and Industries Regulated by IDFPR, www.https://idfpr.illinois.gov/profs/proflist.html (last visited Nov. 14, 2023) [https://perma.cc/8453-SXRD]. Many of those professions have long been subject to the Consumer Fraud Act, such as pharmacists and drug distributors. See, *e.g.*, *Sullivan's Wholesale Drug Co. v. Faryl's Pharmacy, Inc.*, 214 Ill. App. 3d 1073, 1082-84 (1991).

¶ 30    Destiny Dental also argues that the legislature knows that Illinois courts exempt dentists from the Consumer Fraud Act, but still has not amended the Act to specifically include the dental industry. Our view is that the Consumer Fraud Act requires no amendment to include dentists and their practices. The Act's broad language and its admonition that we are to read it liberally already includes the dental industry. We are unpersuaded that the legislature has expressed tacit approval for excluding Consumer Fraud Act claims arising out of the business aspects of dentistry. By Destiny Dental's own logic, the legislature also knows that the Third District and federal courts applying Illinois's Consumer Fraud Act allow such claims but has not acted to exclude them and bring the Consumer Fraud Act in line with existing First District case law. We do not believe the legislature's lack of action one way or the other has any particular significance given the clear language of the statute.

¶ 31    Yildiz argues that the Consumer Fraud Act protects "consumers not patients." That is incorrect. "The protections of the [Consumer Fraud Act] are not limited to consumers." *Id.* at 1082. "*Any* person who suffers damage as a result of the violation of this Act committed by any other person may bring an action against such person." (Emphasis added.) 815 ILCS 505/10a (West

2018). Accordingly, we hold that a plaintiff may bring a Consumer Fraud Act claim premised on the business aspects of dentistry as opposed to a claim alleging dental malpractice.

¶ 32                                    B. Dismissal of Mathis's Claims

¶ 33    We now turn to the dismissal of counts I, II, III, and IX in this case. The circuit court dismissed these Consumer Fraud Act claims based on *Tkacz* and *Ripes*, which, as explained above, rely on earlier cases that run contrary to the plain language of the Act and that were decided based on the now-defunct "public injury" requirement, such as in *Frahm* and *Feldstein*. We certainly do not criticize the circuit court for following First District authority. But, having held that the Consumer Fraud Act applies to the business aspects of dentistry, we must determine whether the dismissal of Mathis's Consumer Fraud Act claims can stand. As noted above, to establish a claim under the Consumer Fraud Act, a plaintiff must prove (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deceptive act or practice, and (3) the occurrence of the deception in the course of conduct involving trade or commerce. *Sheffler*, 2011 IL 110166, ¶ 62.

¶ 34    Counts I, II, and IX alleged that Yildiz and Destiny Dental engaged in balance billing, a practice in which a health provider improperly converts an insured patient into a self-paying patient by requiring a promise of full, out-of-pocket payment for treatment to proceed. See *Falls*, 2016 IL App (3d) 150319, ¶ 38. Health providers engage in balance billing to collect larger payments than they would receive under agreements with insurance companies that pay reduced rates. See *id.* For example, in *Falls*, the plaintiff received emergency treatment at Silver Cross Hospital following an automobile accident. *Id.* ¶ 7. He signed a consent form agreeing to pay for billed services totaling $18,129.50 if his insurance did not cover them. *Id.* ¶¶ 7-8. However, the agreement

between the hospital and the plaintiff's insurer prohibited the hospital from balance billing the plaintiff to collect more than it would under the reduced rate it agreed to with his insurance company. *Id.* ¶ 6. Nevertheless, the hospital asserted a lien for $18,129.50 against the plaintiff. *Id.* ¶ 9. The hospital eventually accepted payment of $5,957.15 from the plaintiff's insurer, but still pursued a lien for $1,264.23 against the plaintiff. *Id.* ¶¶ 10-13. It appears that the hospital hoped to recover a portion of the plaintiff's personal injury settlement related to the automobile accident. *Id.* ¶¶ 12-13. The plaintiff sued the hospital, alleging a violation of the Consumer Fraud Act for balance billing him through the lien. *Id.* ¶ 16. The Third District reversed the dismissal of the plaintiff's Consumer Fraud Act claim, holding that his "complaint contained sufficient allegations to establish Silver Cross intended for the [plaintiff] to *rely* on incomplete information in order to secure [his] permission for a hospital lien that was not limited to the amount of PPO discounted services." (Emphasis in original.) *Id.* ¶¶ 40-41. The court explained that the hospital used a consent form to secure the plaintiff's permission to allow the hospital to "pursue balance billing by hospital lien with the patient's uninformed blessing," in violation of the hospital's agreement with the plaintiff's insurance company. *Id.* ¶ 38.

¶ 35    Mathis's balance billing allegations are similar. Mathis alleged that Yildiz recommended installing a crown or filling on tooth 19, knowing that Mathis's insurance had not authorized it and almost certainly would not cover it. Yildiz then drilled into tooth 19 and had Mathis sign a treatment plan charging her $600 to complete work on the tooth, despite knowing that Mathis's insurance plan prohibited charging Mathis for the procedure. Like the hospital in *Falls*, Yildiz and Destiny Dental sought to circumvent Mathis's Medicaid-based insurance and instead charge her

the full price of the procedure. Charging and collecting out-of-pocket payments from patients is part of a dental clinic's business, not the practice of dentistry.

¶ 36    However, as pled, counts I, II, and IX incorporated Mathis's allegations that "[d]rilling into [her] tooth did not have a medical purpose" and that "[t]he sole purpose of drilling into tooth #19 was to create the evidence necessary to defraud [her] insurer." These are allegations of dental malpractice, *i.e.*, the performance of an unnecessary and harmful dental procedure. The question is whether Mathis can separate her allegations of fraudulent balance billing from her claim that Yildiz drilling into tooth 19 was dental malpractice. For example, in *Falls*, the plaintiff did not allege that the emergency treatment he received after the automobile accident was improper; his claims focused only on the hospital's billing and collection practices. *Id.* ¶¶ 7-16. We reverse the dismissal of these counts and remand with instructions that Mathis be allowed to amend her complaint to determine whether she can plead Consumer Fraud Act violations independent of dental malpractice. Mathis could arguably allege that balance billing her was improper, even if Yildiz drilling on tooth 19 was not dental malpractice.

¶ 37    *Falls* and the instant case reflect a practical and common problem. Health insurance is complex and difficult for patients to understand, particularly when they are suffering and in need of immediate treatment. See Wendy Netter Epstein, *Private Law Alternatives to the Individual Mandate*, 104 Minn. L. Rev. 1429, 1487-88 (2020). Under the Consumer Fraud Act, dentists are precluded from taking advantage of vulnerable patients by conditioning treatment on a promise of full, out-of-pocket payment that the patients' insurance does not permit. We believe that our holding is consistent with the legislative intent of the Consumer Fraud Act, as well as the language contained in it.

¶ 38    Finally, we affirm the dismissal of count III. That count alleged deceptive acts by Yildiz: drilling into tooth 19 to make it appear damaged enough to qualify for insurance coverage, then submitting X-rays to Mathis's insurer with the false suggestion that the tooth appeared that way when Mathis first arrived. However, Count III alleged that Yildiz did so "with the intent that [Mathis's] *insurer* rely upon its appearance in approving unnecessary [dental] work." (Emphasis added.). That is not sufficient for Mathis to state a Consumer Fraud Act claim because there is no allegation that Yildiz intended *Mathis* to rely on the X-rays of her damaged tooth. See *Sheffler*, 2011 IL 110166, ¶ 62. While the circuit court should have dismissed count III pursuant to section 2-615 instead of section 2-619(a)(9), we can affirm the dismissal on any basis in the record. See *Mazal v. Arias*, 2019 IL App (1st) 190660, ¶ 17. Accordingly, we reverse and remand the dismissal of counts I, II, and IX, and affirm the dismissal of count III.

¶ 39                                        III. CONCLUSION

¶ 40    For the foregoing reasons, we reverse the dismissal of counts I, II, and IX, and we remand with directions that plaintiff be allowed to file a third amended complaint. We affirm the dismissal of both versions of count III.

¶ 41    Affirmed in part and reversed in part.

¶ 42    Cause remanded.

---

*Mathis v. Yildiz*, **2023 IL App (1st) 221703**

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-11914; the Hon. Kathy M. Flanagan and the Hon. Thomas More Donnelly, Judges, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | Nicholas Nepustil, of Benjamin & Shapiro, Ltd., of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Michael Vittori and Susan B. Frischer, of Quintairos, Prieto, Wood & Boyer, PA, of Chicago, for appellee Helin Yildiz. |
| | Robert E. Elworth and Timothy P. Collins, of HeplerBroom, LLC, of Chicago, for other appellees. |